FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. RICHARD ROOSEVELT BAHR, JR., *Defendant-Appellant*. | No. 12-30218 D.C. No. 3:11-cr-00028-BR-1 OPINION |

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted
May 8, 2013—Portland, Oregon

Filed September 16, 2013

Before: Alfred T. Goodwin, Stephen Reinhardt,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Goodwin

# SUMMARY[*]

## Criminal Law

Vacating a sentence and remanding, the panel held that the district court's consideration, at sentencing, of compelled statements made by the defendant in the course of sex offender treatment during an earlier period of post-prison supervision violated his Fifth Amendment privilege against self-incrimination.

The panel left to the district court on remand the determination whether the defendant's mother's testimony was admissible.

## COUNSEL

Thomas J. Hester, Assistant Federal Public Defender, Portland, Oregon,  for Defendant-Appellant.

Gary Y. Sussman, Assistant United States Attorney, Portland, Oregon, for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

## OPINION

GOODWIN, Senior Circuit Judge:

Defendant Richard Bahr, Jr. appeals the 240-month concurrent sentences he received after pleading guilty to two counts of possessing child pornography. Because the district court erroneously considered Bahr's statements made during an earlier period of post-prison supervision, we vacate the sentence and remand.

## I.  BACKGROUND

In 2003, Bahr was convicted of third degree rape under Oregon state law. Upon his release to supervision, Bahr was required to complete an approved sex offender treatment program. The terms of his supervision required adherence to all rules and conditions of the program and noted that the program could include polygraph testing. Bahr was indeed required to take a "full disclosure" polygraph test regarding his sexual history. During the test, he revealed that, as a minor, he had sexual contact with six other minors. He also revealed that, as an adult, he had sexual contact with seven different minors. And he revealed that he had eight to ten sexual encounters with fifteen- or sixteen-year-old girls while he was between eighteen and twenty years old. In another portion of the treatment program, Bahr admitted in a workbook that he had sexually abused eighteen children.

When the government prepared the pre-sentence report ("PSR") in this case, it included Bahr's admissions made during the polygraph disclosure and in the workbook exercise

("treatment disclosures"). Bahr moved to suppress the treatment disclosures. The district court denied the motion.[1]

During the sentencing hearing, the prosecution also called as a witness Sandra Brown, Bahr's mother, who testified regarding statements Bahr made to her concerning his past sexual misconduct.

## II.  DISCUSSION

The use of the compulsory treatment disclosures at sentencing violated Bahr's Fifth Amendment privilege against self-incrimination. *United States v. Antelope*, 395 F.3d 1128, 1133 (9th Cir. 2005). In order to establish a violation, a person must show "(1) that the testimony desired by the government carried the risk of incrimination . . . and (2) that the penalty he suffered amounted to compulsion." *Antelope*, 395 F.3d at 1134. Potential violations of the Fifth Amendment are legal questions reviewed de novo. *Id.* at 1133.

### A.  Treatment Disclosures

We make clear now that the use of unconstitutionally compelled statements to determine a sentence in a later, unrelated criminal proceeding is unconstitutional. The Supreme Court has recognized that the Fifth Amendment's protections extend to the sentencing phase of a criminal case. *Mitchell v. United States*, 526 U.S. 314, 327–28 (1999). We have recognized that those protections also extend to separate criminal proceedings. *United States v. Saechao*, 418 F.3d

---

[1] However, the disputed information was not used in calculating the sentencing guideline range.

1073, 1081 (9th Cir. 2005). Thus, in accord with this court's precedent, we hold that the district court's consideration of the treatment disclosures violated Bahr's Fifth Amendment rights.

Although Bahr did not assert his Fifth Amendment right against self-incrimination at the time of the disclosures, that right is self-executing where its assertion "is penalized so as to foreclose a free choice." *Minnesota v. Murphy*, 465 U.S. 420, 434 (1984) (internal quotation and alteration omitted). When the government conditions continued supervised release on compliance with a treatment program requiring full disclosure of past sexual misconduct, with no provision of immunity for disclosed conduct, it unconstitutionally compels self-incrimination. *Antelope*, 395 F.3d at 1133–39. Revocation of supervised release is not necessary to violate the right; the threat of revocation is itself sufficient to violate the privilege and make the resultant statements inadmissible. *Saechao*, 418 F.3d at 1081.

First, to determine the risk of incrimination, we ask whether "the threat of future criminal prosecution is reasonably particular and apparent." *Antelope*, 395 F.3d at 1134. Like *Antelope*, *id.* at 1134–35, Bahr was required to give a full disclosure without a guarantee of immunity, and with specific acknowledgment from his parole officer that crimes would be reported to the district attorney and could be prosecuted.

The government tries to downplay the threat of prosecution here by arguing that the treatment counselor told Bahr she had not seen anyone prosecuted. The record is unclear whether the counselor actually gave such assurances to Bahr. But even if she had, those assurances were neither

a guarantee of immunity, nor a controlling acknowledgment in light of the explicit terms of supervision and the separate position of the parole officer.**²**  The mandatory completion of the treatment program created a particular and apparent threat of future prosecution.

Second, we must determine whether the penalty amounted to compulsion by asking whether it was sufficiently coercive and "more than merely hypothetical." *Id.* at 1138.  As in *Saechao*, 418 F.3d at 1078, Bahr faced terms of supervised release that mandated his successful completion of a treatment program.  A refusal or failure to complete the program would in fact subject him to revocation and further incarceration.**³**  And, as already discussed, revocation is a sufficiently coercive penalty. *Antelope*, 395 F.3d at 1133–39; *Saechao*, 418 F.3d at 1081.  Thus, the penalty Bahr faced amounted to compulsion.

---

**²** The government also asserts that the parole officer told Bahr there were ways to reveal offenses that *might* not result in prosecution, but that is no more than implicit recognition that Bahr faced incriminating himself by completing treatment.  It is similarly irrelevant that Bahr was not in fact prosecuted on the basis of any of his disclosures.  The privilege is concerned with threat of incrimination; it does not look to whether the government mercifully chooses not to capitalize on the constitutional violations it orchestrated.

**³** The district court confused two separate terms of release, noting that one provision regarding the requirement to participate in random polygraph exams for risk management and treatment stated that responses could not be used as evidence to prove a violation of supervision.  But that risk management provision was distinct from the treatment provision, which contained no safe-harbor from possible future use of disclosures as evidence.

The government argues that this case is more akin to *Murphy*, where no Fifth Amendment violation was found. However, among other differences, Murphy's terms of supervision did not require answering the parole officer's questions; the terms required only that any answers *actually given* be truthful. 465 U.S. at 437. The Court found no violation because there was no "reasonably perceived threat of revocation." *Id.* at 434–39. That is, Murphy could have chosen not to answer his parole officer's questions without any risk of penalty. That was not the case here, where Bahr had no choice but to answer the questions posed during the polygraph examination.

Next, the government's reliance on *United States v. Lee*, 315 F.3d 206 (3d Cir. 2003), fails because that case is distinguishable. As we noted in *Antelope*, the *Lee* court had simply found the defendant failed to show his probation remained conditioned on waiving his Fifth Amendment privilege: the polygraph condition in *Lee* did not require the defendant to answer incriminating questions, and the prosecutor there had stipulated that a failure to pass the polygraph test would not likely result in violation of supervised release. *Antelope*, 395 F.3d at 1138–39 (discussing *Lee*, 315 F.3d at 212). Here, in contrast, Bahr faced a concrete threat of revocation.[4]

---

[4] Additionally, we cannot apply *United States v. Ramos*, 685 F.3d 120 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 567 (2012), because it is inconsistent with *Saechao*. To the extent that *Ramos* stands for the proposition that words that only threaten, rather than guarantee, revocation—such as "could" or "may"—are insufficiently compelling, it would conflict with our own circuit law. *See Saechao*, 418 F.3d at 1075, 1078 (failure to comply with terms is "grounds for . . . revocation"; defendant's "[f]ailure to answer . . . would have *justified* the revocation of his probation" (emphasis added)).

At bottom, Bahr faced revocation of his supervised release for a failure to successfully complete treatment, and he received no assurance that his admissions during treatment would not be used to prosecute him. The government therefore compelled Bahr's treatment disclosures in violation of the Fifth Amendment, and the district court should not have considered the information.

## B.  Testimony of Bahr's Mother

The government then argues that Brown's testimony at the sentencing hearing provides an independent ground for affirming the sentence. Not so. While the court may affirm on any ground supported in the record, *United States v. Pope*, 686 F.3d 1078, 1083 (9th Cir. 2012), admission of the treatment disclosures was improper, and the district court relied on the treatment disclosures' admissibility to justify admitting Brown's testimony. The admissibility of Brown's testimony must be considered separately from the admission of the treatment disclosures, and we leave that issue to the district court on remand. We express no opinion regarding whether Brown's testimony was admissible evidence in determining a valid sentence in this case.

## III.  CONCLUSION

Because the district court erred in considering Bahr's compelled statements obtained in violation of Bahr's Fifth Amendment privilege against self-incrimination, we remand for re-sentencing. We leave the issue of the admissibility of Brown's testimony for the district court on remand, and we decline to reassign this case, as Bahr urges. If any revisions or redactions to the PSR must be made in light of our ruling,

the district court should have the first opportunity to address those alterations.

**SENTENCE VACATED AND REMANDED.**