Filed 9/29/14  P. v. Riding CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040633 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1359537) |
| v. | |
| JONATHAN SCOTT RIDING, | |
| Defendant and Appellant. | |

## I.    INTRODUCTION

Defendant Jonathan Scott Riding was placed on probation after pleading no contest to possessing matter depicting a person under the age of 18 engaging in or simulating sexual conduct.  (Pen. Code, § 311.11, subd. (a).[1])

On appeal, defendant challenges probation conditions that require him to: (1) waive any privilege against self-incrimination and participate in polygraph examinations, as part of the sex offender management program; (2) waive any psychotherapist-patient privilege to enable communication between the sex offender management professional and the probation officer; (3) not date, socialize with, or form a romantic relationship with any person who has physical custody of a minor, unless approved by the probation officer; (4) not access the Internet or any other online service

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

through use of a computer or other electronic device, at any location, without prior approval of the probation officer; (5) not purchase or possess any pornographic or sexually explicit material as defined by the probation officer; and (6) not frequent, be employed by, or engage in any business where pornographic materials are openly exhibited. We will modify some of the challenged probation conditions and affirm the judgment as modified.

## II. BACKGROUND

Defendant was charged with possessing matter depicting a person under the age of 18 engaging in or simulating sexual conduct (§ 311.11, subd. (a)), and he pleaded no contest to that offense.[2]

The trial court placed defendant on formal probation for three years and ordered him to serve a six-month county jail sentence. The trial court imposed a number of probation conditions.[3]

As required by section 1203.067, subdivision (b)(2), defendant was ordered to "enter, participate in and complete an approved sex offender management program." (Condition No. 7.) As required by section 1203.067, subdivision (b)(3), defendant was required to "waive any privilege against self-incrimination and participate in polygraph examinations, which shall be part of the sex offender management program." (Condition No. 8.) As required by section 1203.067, subdivision (b)(4), defendant was required to "waive any psychotherapist-patient privilege to enable communication between the sex offender management professional and the Probation Officer." (Condition No. 9.)

---

[2] The record contains no information concerning the facts of the underlying offense. Defendant entered his plea before the preliminary hearing, and the probation report does not contain a summary of the offense.

[3] The probation conditions were stated orally by the trial court and also appear in the probation report and a separate document entitled "Conditions of Sentence/Probation (Sex Offender)." Defendant cites to the probation conditions as worded and numbered in the probation report; we will follow suit.

2

Among other probation conditions, the trial court ordered that defendant's "computer and all other electronic devices . . . be subject to Forensic Analysis search" (condition No. 6), and that defendant "provide passwords [and] email addresses" to the probation officer (condition No. 6a). Defendant was ordered not to "date, socialize with or form a romantic relationship with any person who has physical custody of a minor unless approved by the Probation Officer." (Condition No. 11.) He was ordered not to "enter any social networking sites, nor post any ads, either electronic or written, unless approved by the Probation Officer." (Condition No. 17.) He was ordered not to "purchase or possess any pornographic or sexually explicit material as defined by the Probation Officer." (Condition No. 19.) He was ordered not to "frequent, be employed by, or engage in, any business where pornographic materials are openly exhibited." (Condition No. 20.) He was ordered not to "access the Internet or any other on-line service through use of a computer, or other electronic device at any location (including place of employment) without prior approval of the Probation Officer," and not to "possess or use any data encryption technique program." (Condition No. 21.) Finally, he was ordered not to "clean or delete Internet browsing activity" and to "keep a minimum of four weeks of history." (Condition No. 22.)

Defendant filed written objections to the probation conditions required by section 1203.067, subdivisions (b)(3) and (b)(4). He claimed that the condition requiring him to waive the Fifth Amendment privilege was unconstitutional "[a]bsent a grant of immunity," that the condition was unreasonable, and that it was unconstitutionally overbroad. He claimed that the condition requiring him to participate in polygraph examinations "without limitation" violated the Fifth Amendment, was overbroad, and was unreasonable. He claimed that the condition requiring him to waive any psychotherapist-patient privilege was invalid because the waiver was coerced, and that the condition was unreasonable. At the sentencing hearing, the trial court noted that its

intention was "that these conditions be limited to facilitating the successful completion of the [sex offender management] program."

Defendant orally objected to condition No. 21, regarding Internet usage, at the sentencing hearing.

### III. DISCUSSION

We begin by setting forth some of the legal principles applicable to defendant's challenges to the probation conditions imposed on him.

"In granting probation, courts have broad discretion to impose conditions to foster rehabilitation and to protect public safety pursuant to Penal Code section 1203.1. [Citations.] 'The court may impose and require . . . [such] reasonable conditions[ ] as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer.' [Citation.] The trial court's discretion, although broad, nevertheless is not without limits: a condition of probation must serve a purpose specified in the statute. In addition, we have interpreted Penal Code section 1203.1 to require that probation conditions which regulate conduct 'not itself criminal' be 'reasonably related to the crime of which the defendant was convicted or to future criminality.' [Citation.] As with any exercise of discretion, the sentencing court violates this standard when its determination is arbitrary or capricious or ' " 'exceeds the bounds of reason, all of the circumstances being considered.' " [Citations.]' [Citation.]" (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120-1121.)

Probation conditions may be challenged on the grounds of unconstitutional vagueness and overbreadth. (*People v. Lopez* (1998) 66 Cal.App.4th 615, 630.) "[W]here an otherwise valid condition of probation impinges on constitutional rights, such conditions must be carefully tailored, ' "reasonably related to the compelling state

4

interest in reformation and rehabilitation . . . ." ' [Citations.]" (*People v. Bauer* (1989) 211 Cal.App.3d 937, 942.) A claim that a probation condition is unconstitutionally vague or overbroad may be reviewed on appeal without an objection in the trial court if it is capable of correction without reference to the particular sentencing record in the trial court. (*In re Sheena K.* (2007) 40 Cal.4th 875, 878-879, 888-889 (*Sheena K.*).)

" 'A statute or regulation is overbroad if it "does not aim specifically at evils within the allowable area of [governmental] control, but . . . sweeps within its ambit other activities that in the ordinary circumstances constitute an exercise" of protected expression and conduct.' [Citations.]" (*People v. Leon* (2010) 181 Cal.App.4th 943, 951 (*Leon*).) "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)

In examining whether a probation condition is void for vagueness, courts have considered whether the condition is " 'sufficiently precise for the probationer to know what is required of him [or her]. . . .' " (*Sheena K., supra,* 40 Cal.4th at p. 890.) "[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.' " (*Ibid.*) That is, the defendant must know in advance when he or she may be in violation of the condition.

With the above principles in mind, we examine each of the conditions challenged here.

### A. *Waiver of Privilege Against Self-Incrimination (Condition No. 8)*

As required by section 1203.067, subdivision (b)(3), defendant was ordered, as a condition of probation, to "waive any privilege against self-incrimination and participate in polygraph examinations, which shall be part of the sex offender management program." (Condition No. 8.)

## 1.    Fifth Amendment

Defendant first contends this probation condition violates the Fifth Amendment to the extent it requires him to waive any privilege against self-incrimination.[4]  He argues that because he has been told that probation will be revoked if he refuses to comply with the waiver, he has been placed in the "classic penalty situation" described in *Minnesota v. Murphy* (1984) 465 U.S. 420 at page 435 (*Murphy*).

In *Murphy,* the defendant was subject to a probation condition requiring that he participate in a treatment program for sexual offenders, report to his probation officer as directed, and be truthful with the probation officer " 'in all matters.' " (*Murphy, supra,* 465 U.S. at p. 422.)  In his treatment program, the defendant admitted a prior rape and murder.  (*Id.* at p. 423.)  Those admissions were communicated to the probation officer, who questioned the defendant.  The defendant admitted the crimes to the probation officer, but the defendant then sought to suppress those admissions on the ground that his statements had been compelled by the probation condition.  (*Id.* at pp. 424-425.)

The United States Supreme Court emphasized that in general, the Fifth Amendment is not self-executing:  "a witness . . . ordinarily must assert the privilege rather than answer if he [or she] desires not to incriminate himself [or herself]." (*Murphy, supra,* 465 U.S. at p. 429.)  The probation condition in *Murphy* required the defendant only to be truthful, and thus the defendant still could have claimed the privilege against self-incrimination.  (*Id.* at pp. 436-437.)  The *Murphy* court considered whether there were any applicable exceptions to the general rule that the Fifth Amendment is not self-executing.  (*Id.* at p. 429.)  In particular, the court considered

---

[4] The Supreme Court is currently considering the constitutionality of the conditions of probation mandated by Penal Code section 1203.067, subdivision (b), for persons convicted of specified felony sex offenses.  (See *People v. Klatt* (2014) 225 Cal.App.4th 906, review granted July 16, 2014, S218755; *People v. Friday* (2014) 225 Cal.App.4th 8, review granted July 16, 2014, S218288; *People v. Garcia* (2014) 224 Cal.App.4th 1283, review granted July 16, 2014, S218197.)

6

whether to excuse the defendant's failure to assert the privilege against self-incrimination on the basis of the "so-called 'penalty' " exception. (*Id.* at p. 434.)

The penalty exception had been applied in cases where "the State not only compelled an individual to appear and testify, but also sought to induce him [or her] to forego the Fifth Amendment privilege by threatening to impose economic or other sanctions 'capable of forcing the self-incrimination which the Amendment forbids.' [Citation.]" (*Murphy, supra,* 465 U.S. at p. 434.) In *Murphy,* there was no evidence that the defendant would have been penalized for exercising his Fifth Amendment privilege. (*Id.* at pp. 437-438.) The probation condition itself "proscribed only false statements; it said nothing about his freedom to decline to answer particular questions and certainly contained no suggestion that his probation was conditional on his waiving his Fifth Amendment privilege with respect to further criminal prosecution." (*Id.* at p. 437.) Further, there was "no direct evidence that Murphy confessed because he feared that his probation would be revoked if he remained silent." (*Ibid.*)

The *Murphy* court explained how the penalty exception could apply to a probationer: "if the State, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." (*Murphy, supra,* 465 U.S. at p. 435, fn. omitted.) However, the court noted, "a State may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination." (*Ibid.,* fn. 7.)

As applied to this case, *Murphy* establishes that defendant's Fifth Amendment rights are not violated by the probation condition requiring him to waive the privilege against self-incrimination as to questions asked during the sex offender management

7

program. The state has, "by implication, assert[ed] that invocation of the privilege" in response to such incriminating questions "would lead to revocation" of probation. (See *Murphy, supra,* 465 U.S. at p. 435.) Thus, if defendant makes any statements in response to questions posed to him during the sex offender management program, those statements will be deemed compelled under the Fifth Amendment and thus involuntary and inadmissible in a criminal prosecution. (*Ibid.*) Since such statements will necessarily fall within the penalty exception, they will not be available for use at a criminal prosecution, and defendant's Fifth Amendment rights have not been violated. (See *Chavez v. Martinez* (2003) 538 U.S. 760, 769 (*Chavez*) [plur. opn. of Thomas, J.] [the Fifth Amendment is not violated "absent use of the compelled statements in a criminal case against the witness"]; *id.* at p. 777 [conc. opn. of Souter, J.].)

Defendant also relies on a trio of Ninth Circuit opinions.

In *United States v. Saechao* (9th Cir. 2005) 418 F.3d 1073 (*Saechao*), the probationer was subject to a condition that he " 'promptly and truthfully answer all reasonable inquiries' from the [probation] officer or face revocation of his probation." (*Id.* at p. 1075.) The probation officer asked the probationer if he had a gun, and the probationer admitted that he had a hunting rifle. The probationer was charged with being a felon in possession of a firearm, and he sought to suppress the fruits of his admission on Fifth Amendment grounds. The district court granted his motion, and the Ninth Circuit upheld the suppression order, finding that this was a " 'classic penalty situation' " because, unlike in *Murphy*, the probationer was required by the probation condition to " 'answer all . . . inquiries.' " (*Id.* at pp. 1075-1079.) *Saechao* does not advance defendant's contention because that case was concerned with the *admissibility* of a defendant's statements *in a criminal prosecution*. No such contention is at issue here. Defendant has not made any statements, and no one is seeking to introduce any statements against him in a criminal prosecution.

8

*United States v. Antelope* (9th Cir. 2005) 395 F.3d 1128 (*Antelope*) is also unhelpful because it too did not uphold a Fifth Amendment challenge to a probation condition. In *Antelope*, the defendant objected on Fifth Amendment grounds to probation conditions requiring him to participate in a sex abuse treatment program and submit to polygraph examinations. He thereafter refused to comply with the polygraph condition and with the treatment program's requirement that he "reveal his full sexual history . . . ." (*Id.* at p. 1132.) His probation was revoked, and he was incarcerated. The Ninth Circuit concluded that the defendant's claim was "ripe" because he had been incarcerated for his refusal to comply with the condition. (*Id.* at pp. 1132-1133.) It concluded that revoking the defendant's probation and incarcerating him for invoking his Fifth Amendment rights violated the Fifth Amendment. (*Id.* at pp. 1134-1140.) *Antelope* is not relevant here. Defendant is making a facial challenge to the probation condition; he has not been subjected to any sanction for refusing to comply with it. We do not have before us in this case the issue of whether defendant may have his probation revoked for refusing to comply with this condition.

*United States v. Bahr* (9th Cir. 2013) 730 F.3d 963 (*Bahr*) is equally unhelpful as it too did not uphold a facial challenge to a condition. Bahr had made admissions during a "'full disclosure' polygraph test" required by a sex offender treatment program upon which his supervised release was conditioned. (*Id.* at p. 965.) Bahr was subsequently convicted of federal child pornography charges, and he sought to suppress the use of his admissions at sentencing in the federal case. (*Ibid.*) The district court denied his suppression motion, but the Ninth Circuit held that the use of his compelled statements against him in the federal case violated the Fifth Amendment. (*Id.* at pp. 965-966.) In *Bahr*, unlike here, the challenged statements were used against the defendant in a criminal proceeding, a classic Fifth Amendment situation. Here, no statements have been made, and none have been used against defendant.

9

Defendant also relies on the Arizona Supreme Court's decision in *State v. Eccles* (Ariz. 1994) 179 Ariz. 226 (*Eccles*) to support his claim. In *Eccles*, the trial court had imposed as a condition of probation that the defendant "waive any and all rights against [self-incrimination]." (*Id.* at p. 227.) The probationer challenged the probation condition itself as violative of the Fifth Amendment, and the Arizona Supreme Court agreed. It reasoned: "Not only is the state prohibited from revoking probation for a legitimate invocation of the privilege against self-incrimination, we perceive the import of the *Murphy* decision as being that the state is also prohibited from making waiver of the privilege a term of probation." (*Id.* at p. 228.) "The state may not force defendant to choose between incriminating himself and losing his probationary status by remaining silent. The fact that defendant has not yet been presented with the dilemma of either incriminating himself or jeopardizing his probation does not affect our decision." (*Ibid.*)

We reject the Arizona Supreme Court's holding in *Eccles* that a probation condition authorizing extraction of compelled statements itself violates the Fifth Amendment, as that holding conflicts with authority from our Supreme Court.

In *Maldonado v. Superior Court* (2012) 53 Cal.4th 1112 (*Maldonado*), the California Supreme Court rejected the defendant's claim that the Fifth Amendment provided "a guarantee against officially compelled *disclosure* of potentially self-incriminating information." (*Id.* at p. 1127.) The *Maldonado* court based its holding on the rule that the Fifth Amendment applies only to *use* of a defendant's incriminating statements; the Fifth Amendment does not bar the government from compelling those statements. "[T]he Fifth Amendment does not provide a privilege against the compelled 'disclosure' of self-incriminating materials or information, but only precludes the use of such evidence in a criminal prosecution against the person from whom it was compelled." (*Id.* at p. 1134.) "[T]he Fifth Amendment privilege against self-incrimination does not target the mere compelled *disclosure* of privileged information, but the ultimate *use* of

10

any such disclosure in aid of a criminal prosecution against the person from whom such information was elicited." (*Id.* at p. 1137.)

The California Supreme Court's decision in *Maldonado* relied on the United States Supreme Court's decision in *Chavez, supra,* 538 U.S. 760. *Chavez* was a civil action involving qualified immunity. The issue was whether a police officer who allegedly compelled statements from the plaintiff could be held liable for violating the plaintiff's civil rights. The plaintiff claimed that the police officer had violated the Fifth Amendment. The United States Supreme Court produced a plurality opinion and multiple separate opinions rejecting the plaintiff's theory. Justice Thomas wrote the lead opinion. In a section of his opinion joined by three other justices, Justice Thomas stated that compelled statements "of course may not be used against a defendant at trial, [citation], but it is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs." (*Id.* at p. 767.) "[M]ere coercion does not violate the text of the Self-Incrimination Clause absent use of the compelled statements in a criminal case against the witness." (*Id.* at p. 769.) Writing separately, Justice Souter acknowledged that it would be "well outside the core of Fifth Amendment protection" to find that "questioning alone" was a "completed violation" of the Fifth Amendment and declined to extend the Fifth Amendment to such a claim. (*Id.* at p. 777.) Thus, five justices held in *Chavez* that the Fifth Amendment is not violated by the extraction of compelled statements.

We are bound by *Maldonado* and *Chavez* (see *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), and they hold that the mere extraction of compelled statements does not violate the Fifth Amendment. Since the challenged probation condition does not purport to authorize the *use* of any statements against defendant in a criminal proceeding, it does not violate the Fifth Amendment.

In sum, because the penalty exception will necessarily apply to statements that defendant makes in response to questions asked as part of the sex offender management

11

program under compulsion of the section 1203.067, subdivision (b)(3) probation condition, the condition itself does not violate the Fifth Amendment.

## 2. Overbreadth/Polygraph Examinations

Defendant also contends that condition No. 8 is overbroad because it requires him to participate in polygraph examinations with no restrictions on the questions that may be asked during those examinations. According to defendant, the condition should be either stricken or limited.

Defendant relies on *Brown v. Superior Court* (2002) 101 Cal.App.4th 313, where the defendant was convicted of stalking while a domestic violence restraining order was in effect. The trial court had imposed probation conditions requiring the defendant to participate in a stalking therapy program and undergo " 'periodic polygraph examinations at defendant's expense, at the direction of the probation officer.' " (*Id.* at p. 321.) The Court of Appeal held that the polygraph condition was overbroad, ordering it modified so that the questions asked would be limited to "those relating to the successful completion of the stalking therapy program and the crime of which Brown was convicted." (*Ibid.*)

Here, the probation condition requires defendant to "participate in polygraph examinations, which shall be part of the sex offender management program." (See § 1203.067, subd. (b)(3).) The probation condition does not expressly limit the questions that may be asked during polygraph examinations to those related to the successful completion of the program or defendant's criminal conviction. However, such a limitation is inherent in the phrase "which shall be part of the sex offender management program." (*Ibid.*) In other words, the probation condition requires polygraph examinations to be used only in furtherance of a probationer's treatment, and thus requires that the questions asked be relevant to that treatment.

In sum, the probation condition need not be modified to expressly state that the questions asked during polygraph examinations must be reasonably related to the

12

completion of defendant's treatment program or his conviction, because such limitations are inherent in the condition.

### B. *Waiver of Psychotherapist-Patient Privilege (Condition No. 9)*

As required by section 1203.067, subdivision (b)(4), defendant was ordered, as a condition of probation, to "waive any psychotherapist-patient privilege to enable communication between the sex offender management professional and the Probation Officer." (Condition No. 9.)

Defendant contends this probation condition is overbroad, violates his constitutional right to privacy, coerces his waiver of a statutory privilege, and is unreasonable. In his opening brief, defendant contends the condition should be stricken or modified, although he does not suggest a specific modification. In his reply brief, defendant requests that if we do not strike the condition, we construe it to require a waiver of the psychotherapist-patient privilege only insofar as it is necessary to enable communication between the sex offender management professional and supervising probation officer.

Our Supreme Court and the United States Supreme Court have both assumed, "*without deciding,* that in at least some circumstances the federal Constitution protects an individual from governmentally compelled disclosure of confidential communications between the individual and his or her psychotherapist or the use of information obtained by such compelled disclosure in a court proceeding." (*People v. Gonzales* (2013) 56 Cal.4th 353, 385 (*Gonzales*); see *NASA v. Nelson* (2011) 562 U.S. 134 [131 S.Ct. 746, 751, 756]; *Whalen v. Roe* (1977) 429 U.S. 589, 605.) We will follow suit and assume, without deciding, that defendant has a constitutional right to privacy with respect to communications with a psychotherapist.

California's statutory psychotherapist-patient privilege is found in Evidence Code section 1014, which provides in pertinent part that "the patient, whether or not a party,

13

has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist . . . ."

"The psychotherapist-patient privilege has been recognized as an aspect of the patient's constitutional right to privacy. [Citations.] It is also well established, however, that the right to privacy is not absolute, but may yield in the furtherance of compelling state interests." (*People v. Stritzinger* (1983) 34 Cal.3d 505, 511.) Even where there is "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct constituting a serious invasion of the privacy interest," the constitutional right to privacy is not violated if "the invasion of the privacy interest is justified because it substantially furthers one or more legitimate competing or countervailing privacy or non-privacy interests." (*In re Christopher M.* (2005) 127 Cal.App.4th 684, 695 (*Christopher M.*), disapproved on a different point in *Gonzales, supra,* 56 Cal.4th at p. 373.)

In *Christopher M.*, the trial court imposed probation conditions requiring the minor to participate in a treatment program and providing that the records of his psychological treatment would be made available to the probation officer and the court upon request. (*Christopher M.*, *supra*, 127 Cal.App.4th at p. 690.) The minor claimed that these conditions violated his constitutional right to privacy and were unconstitutionally overbroad. (*Id.* at p. 691.) The court held that the invasion of the minor's privacy was justified by the State's legitimate interests. "[T]he state has a legitimate countervailing interest in (1) protecting the public against Christopher's violent and antisocial conduct, and (2) determining both whether he is fully complying with the numerous conditions of his new grant of probation, and whether treatment is succeeding . . . ." (*Id.* at p. 695.)

As in *Christopher M.*, the invasion of defendant's privacy is justified by the State's legitimate countervailing interests. The Legislature's decision to restrict the statutory psychotherapist-patient privilege for sex offenders solely with respect to

14

communications necessary to the success of the sex offender management program is justified by the State's legitimate interest in protecting the public from defendant's sexual misconduct, monitoring his compliance with his probation conditions, and determining whether his treatment is succeeding.

Defendant's claim that the section 1203.067, subdivision (b)(4) condition is unconstitutionally overbroad fails for the same reason. A probation condition may limit a constitutional right so long as the condition is closely tailored to its purpose. (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.) Here, the purpose of the condition is to protect the public and monitor defendant's compliance and the success of his treatment. Section 290.09 mandates certain communications between the probation officer and the certified "sex offender management professionals" who are required to "assess each registered sex offender on formal probation." (§ 290.09, subd. (b)(1).) First, the certified sex offender management professional is required to provide the probation officer with the probationer's scores on required risk assessment tools, and the probation officer is required to send the scores to the Department of Justice. (*Id.*, subd. (b)(2).) Second, the certified sex offender management professional is required to communicate with the probation officer "on a regular basis, but at least once a month, about the offender's progress in the program and dynamic risk assessment issues." (*Id.*, subd. (c).)

Section 1203.067, subdivision (b)(4) mandates that defendant waive the psychotherapist-patient privilege only "to enable communication between the sex offender management professional and supervising probation officer, pursuant to Section 290.09." Since section 290.09 is explicitly incorporated by reference, and since section 290.09 limits the subject matter of the communication between the sex offender management professional and the probation officer, the condition does not require defendant to waive the psychotherapist-patient privilege as to any other subjects. This construction comports with the plain language of the statute, and it also harmonizes the statute with section 290.09. (See *People v. Kennedy* (2011) 194 Cal.App.4th 1484, 1490-

15

1491.)  As the challenged condition does not require defendant to waive his psychotherapist-patient privilege outside of a limited context, it is closely tailored to its purpose and not unconstitutionally overbroad.

There is no merit to defendant's assertion that the section 1203.067, subdivision (b)(4) condition is unreasonable.  Protecting the public, monitoring defendant's compliance with his probation conditions, and facilitating the success of his treatment program are all reasonably related to reforming and rehabilitating defendant so as to prevent his future criminality.  (*People v. Lent* (1975) 15 Cal.3d 481, 486; § 1203.1, subd. (j).)

Defendant also claims that the waiver of his psychotherapist-patient privilege is invalid because the waiver is "coerced."  He relies on *Regents of University of California v. Superior Court* (2008) 165 Cal.App.4th 672 (*Regents*).  However, that case did not involve a probation condition or the psychotherapist-patient privilege.  *Regents* involved the attorney-client privilege under Evidence Code section 912, which specifies that the privilege is not waived when a holder has disclosed privileged communications "without coercion."  The issue in *Regents* was whether the defendant corporations (the real parties in interest) had waived the attorney-client privilege when they disclosed privileged communications while cooperating with the government under threat of regulatory action.  The facts and statute at issue in *Regents* are not analogous to this case.  Here, the Legislature has mandated that sex offenders like defendant not be granted probation unless this condition is imposed.  Defendant was free to decline the grant of probation, burdened as it was with this condition, but he chose to accept it.  "Probation is not a right, but a privilege.  'If the defendant considers the conditions of probation more harsh than the sentence the court would otherwise impose, he has the right to refuse probation and undergo the sentence.  [Citations.]' " (*People v. Bravo* (1987) 43 Cal.3d 600, 608.)  There is no coercion.

In sum, we conclude there is no need to strike or modify the probation condition imposed pursuant to section 1203.067, subdivision (b)(4).

### C.     *Romantic Relationship Condition (Condition No. 11)*

Defendant challenges the probation condition that requires him not to "date, socialize with or form a romantic relationship with any person who has physical custody of a minor unless approved by the Probation Officer." (Condition No. 11.) He contends the condition is unconstitutionally vague and overbroad. He requests this court remand the case to the trial court with directions to impose a condition that is more precise and closely tailored to the purpose of protecting minors in his presence.

The Attorney General concedes the probation condition is overbroad and vague to the extent it uses the term "socialize." The Attorney General suggests the term "socialize" be stricken "[b]cause this term could even bar trivial interactions with the majority of people in the country, and a system for prior approval by a probation officer would be unmanageable."

We agree with defendant that this particular condition is overbroad because it imposes significant restrictions on defendant's constitutional right to free association. Similar conditions were found overbroad in *People v. O'Neil* (2008) 165 Cal.App.4th 1351 (*O'Neil*) and *U.S. v. Wolf Child* (9th Cir. 2012) 699 F.3d 1082, 1101 (*Wolf Child*).

In *O'Neil,* the trial court imposed the following condition of the defendant's probation: " 'You shall not associate socially [i.e. socialize], nor be present at any time, at any place, public or private, with any person, as designated by your probation officer.' " (*O'Neil, supra,* 165 Cal.App.4th at p. 1354.) The reviewing court observed that, "[a]s written, there are no limits on those persons whom the probation officer may prohibit defendant from associating with." (*Id*. at p. 1357.) The *O'Neil* court noted that the condition failed to "identify the class of persons with whom defendant may not associate" or "provide any guideline as to those with whom the probation department may forbid association." (*Id*. at pp. 1357-1358.) The *O'Neil* court explained that while a

17

trial court "may leave to the discretion of the probation officer the specification of the many details that invariably are necessary to implement the terms of probation," "the court's order cannot be entirely open-ended." (*Id*. at pp. 1358-1359.)  It concluded that "[w]ithout a meaningful standard, the order is too broad and it is not saved by permitting the probation department to provide the necessary specificity." (*Id*. at p. 1358, fn. omitted.)

In *Wolf Child*, one of the conditions of the defendant's supervised release was that he not " 'date or socialize with anybody who has children under the age of 18' without prior written approval from his probation officer." (*Wolf Child, supra,* 699 F.3d at p. 1100, fn. omitted.)  In determining that the condition suffered from constitutional overbreadth because it infringed on Wolf Child's right to free association (*id.* at p. 1100), the Ninth Circuit Court of Appeals noted, "[t]he prohibited group includes people close to Wolf Child, such as family members, friends, and neighbors who might have children.  It would also include a boss or coworker, a sponsor in a support group, or a spiritual leader.  The number of people with whom Wolf Child might socialize, knowing them to have children under the age of 18, is indeed vast.  For the 10 years of his supervised release, Wolf Child would be required to obtain prior written approval from his probation officer before, for instance, having dinner with [the mother of his oldest child] on a special occasion, or meeting a close family member or friend for coffee, or going to an AA meeting or a tribal function with others seeking to improve their own lives or their tribe's social conditions generally; he might even find himself prohibited from joining his coworkers in the lunch-room or at a social activity sponsored by his employer." (*Id.* at p. 1101.)  The *Wolf Child* court went on to say, "It is hard to imagine how Wolf Child would be able to develop friendships, maintain meaningful relationships with others, remain employed, or in any way lead a normal life during the 10 years of his supervised release were he to abide" by the condition that he not date or socialize with anybody who has children under the age of 18. (*Ibid.*)  The *Wolf Child* court found the condition

18

"overbroad and thus not sufficiently limited to achieving the goals of deterrence, protection of the public or rehabilitation." (*Id.* at p. 1100.)

The condition imposed here is designed to prevent defendant having contact with children. However, the condition prohibits defendant from socializing with people such as family, friends and coworkers, even though he may never come into contact with their children. A restriction on socializing with *anybody* who has a child or children under the age of 18, even though defendant may never come into contact with those children, is not carefully tailored to the purpose of the condition. Simply put, it burdens activity that does not raise a sufficiently high probability of harm to governmental interests to justify the interference. Thus, we agree that the term "socialize" should be stricken from the condition.

On the other hand, the terms "date" and "form a romantic relationship" do not suffer from similar overbreadth problems. The number of individuals who defendant might seek to date or form a romantic relationship with is not nearly as large as the number of individuals defendant might socialize with. Further, although it is possible for a probationer to date or form a romantic relationship without coming into contact with the minors the condition seeks to protect, the condition is sufficiently restrictive in light of its purpose, which is to reduce defendant's opportunities for contact with minors.

Nor do we believe the terms "date" and "romantic relationship" are unconstitutionally vague, as both terms "have a 'plain commonsense meaning, which is well settled . . . .' [Citations.]" (*In re R.P.* (2009) 176 Cal.App.4th 562, 566-567.) The verb "date," in this context, is commonly understood to mean to engage in activities with another person with the intent of forming a romantic relationship.[5] A romantic

---

[5] One meaning of the noun "date" is "a social engagement between two persons that often has a romantic character," and the verb "date" can mean "to make or have a date with" or "to go out on usu. romantic dates." (Merriam-Webster's Collegiate Dict. (10th ed. 1993) p. 294.)

relationship is commonly understood to mean a relationship in which two people have feelings of love or affection for one another.[6] Thus, the terms "date" and "romantic relationship" are " 'sufficiently precise for the probationer to know what is required of him [or her]. . . .' " (*Sheena K., supra,* 40 Cal.4th at p. 890.)

For the reasons stated above, we will order condition No. 11 modified to provide: "The defendant may not date or form a romantic relationship with any person who has physical custody of a minor unless approved by the Probation Officer."

### D.      *Internet Access Condition (Condition No. 21)*

Defendant's next challenge is to the probation condition ordering him not to "access the Internet or any other on-line service through use of a computer, or other electronic device at any location (including place of employment) without prior approval of the Probation Officer," and not to "possess or use any data encryption technique program." (Condition No. 21.)

Defendant contends this condition is overbroad, both as a general matter and under the circumstances of this case. With regard to his as-applied challenge, defendant argues that other probation conditions place sufficient limitations on his use of a computer and the Internet, making it unnecessary to also require him not to use the Internet without the approval of his probation officer. He points to the probation conditions requiring his "computer and all other electronic devices . . . be subject to Forensic Analysis search" (condition No. 6), requiring him to "provide passwords [and] email addresses" to the probation officer (condition No. 6a), ordering him not to "enter any social networking sites, nor post any ads, either electronic or written, unless approved by the Probation Officer" (condition No. 17), and ordering him not to "clean or delete Internet browsing activity" and to "keep a minimum of four weeks of history" (condition No. 22).

---

[6] One meaning of "romantic" is "marked by expressions of love or affection." (Merriam-Webster's Collegiate Dict. (10th ed. 1993) p. 1016.)

Defendant acknowledges that this court approved a similar condition in *People v. Pirali* (2013) 217 Cal.App.4th 1341 (*Pirali*), but he urges us to reconsider that decision.[7] In *Pirali,* this court found "no merit to defendant's contention that the existence of the other, less restrictive Internet- and computer-related probation conditions renders the broader Internet condition superfluous or contradictory." (*Id.* at p. 1347.) This court also concluded that the condition at issue was not a "blanket prohibition" on Internet access because it "grants defendant the ability to access the Internet on his computer and other electronic devices so long as he obtains prior permission from his [probation] officer." (*Id.* at pp. 1349-1350.)

We decline defendant's invitation to part ways with *Pirali*. However, we do agree, as defendant alternatively contends and as the Attorney General concedes, that the probation condition should be modified to include scienter requirements. "[W]ithout an express knowledge requirement, defendant could unwittingly violate the condition as there are situations in which he may not know he has access to or has accessed the Internet." (*Pirali, supra,* 217 Cal.App.4th at p. 1350.) Because the addition of explicit knowledge elements will protect defendant from truly inadvertent acts while still serving the purpose of ensuring that his probation officer can track his Internet activity as necessary, we will modify condition No. 21 as follows: "The defendant shall not

---

[7] Defendant also cites two federal opinions finding similar probation conditions overbroad. (See *U.S. v. Freeman* (3d Cir. 2003) 316 F.3d 386, 392, fn. omitted ["it is not reasonably necessary to restrict all of Freeman's access to the internet when a more limited restriction will do"]; *U.S. v. Sofsky* (2d Cir. 2002) 287 F.3d 122, 126 ["the condition inflicts a greater deprivation on Sofsky's liberty than is reasonably necessary"].) Defendant fails to acknowledge that other federal opinions have upheld such conditions. (See *U.S. v. Rearden* (9th Cir. 2003) 349 F.3d 608, 621 ["The condition does not plainly involve a greater deprivation of liberty than is reasonably necessary for the purpose because it is not absolute; rather, it allows for approval of appropriate online access by the Probation Office."]; *U.S. v. Ristine* (8th Cir. 2003) 335 F.3d 692, 695-696 [declining to follow *Freeman* and *Sofsky*]; *U.S. v. Zinn* (11th Cir. 2003) 321 F.3d 1084, 1093 [same].)

21

knowingly access the Internet or any other on-line service through use of a computer, or other electronic device at any location (including place of employment) without prior approval of the Probation Officer.  The defendant shall not knowingly possess or use any data encryption technique program."

### E.  Conditions Concerning Pornography (Conditions Nos. 19 & 20)

Defendant challenges, as unconstitutionally vague, the probation condition ordering him not to "purchase or possess any pornographic or sexually explicit material as defined by the Probation Officer" (condition No. 19) and the probation condition ordering him not to "frequent, be employed by, or engage in, any business where pornographic materials are openly exhibited" (condition No. 20).

Defendant contends these two conditions fail to provide him advance notice of what materials are prohibited.  He requests that both of these conditions be modified to include knowledge elements, and that condition No. 20 be modified to replace the word "frequent" with the phrase "visit or remain."  The Attorney General also asks this court to order the conditions modified to include knowledge elements and does not appear to oppose using the phrase "visit or remain" in lieu of the word "frequent."

"[T]he law has no legitimate interest in punishing an innocent citizen who has no knowledge of the presence of a [prohibited item]." (*People v. Freitas* (2009) 179 Cal.App.4th 747, 752 [modifying probation condition to prohibit knowing possession of a firearm or ammunition].)  Accordingly, courts have consistently ordered modification of probation conditions to incorporate a scienter requirement where a probationer could unknowingly engage in the prohibited activity.  (E.g., *In re Victor L.* (2010) 182 Cal.App.4th 902, 912-913 [modifying probation condition to prohibit knowing presence of weapons or ammunition].)

In *Pirali,* this court modified a probation condition that prohibited the defendant from purchasing or possessing pornographic or sexually explicit materials as defined by the probation officer.  This court explained, "Materials deemed explicit or pornographic,

22

as defined by the probation officer, is an inherently subjective standard that would not provide defendant with sufficient notice of what items are prohibited." (*Pirali, supra,* 217 Cal.App.4th at p. 1353.) We modified the condition to state that the defendant was "prohibited from purchasing or possessing pornography or sexually explicit materials, having been informed by the probation officer that such items are pornographic or sexually explicit." (*Ibid.*) Following the rationale of *Pirali,* we will modify condition No. 19 to include an express knowledge requirement and to delete the phrase "as defined by the probation officer," so that it provides: "The defendant shall not purchase or possess any material he knows or reasonably should know to be pornographic or sexually explicit."

This court has previously held that the term "frequent" is unconstitutionally vague. (*Leon, supra,* 181 Cal.App.4th at p. 952; *In re H.C.* (2009) 175 Cal.App.4th 1067, 1072.) Thus, we will modify the condition that defendant "not frequent, be employed by, or engage in, any business where pornographic materials are openly exhibited" (condition No. 20) to provide: "The defendant shall not knowingly visit or remain in, be employed by, or engage in, any business where pornographic materials are openly exhibited."

## IV. DISPOSITION

Condition No. 11 is modified to read as follows: "The defendant may not date or form a romantic relationship with any person who has physical custody of a minor unless approved by the Probation Officer."

Condition No. 19 is modified to read as follows: "The defendant shall not purchase or possess any material he knows or reasonably should know to be pornographic or sexually explicit."

Condition No. 20 is modified to read as follows: "The defendant shall not knowingly visit or remain in, be employed by, or engage in, any business where pornographic materials are openly exhibited."

23

Condition No. 21 is modified to read as follows: "The defendant shall not knowingly access the Internet or any other on-line service through use of a computer, or other electronic device at any location (including place of employment) without prior approval of the Probation Officer. The defendant shall not knowingly possess or use any data encryption technique program."

As modified, the judgment is affirmed.

_____
BAMATTRE-MANOUKIAN, J.


WE CONCUR:



_____
ELIA, ACTING P.J.




_____
MIHARA, J.