**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-4767

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JUAN ELIAS LARA,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Abingdon.  James P. Jones, District Judge.  (1:14−cr−00027−JPJ−PMS−1)

Argued:  January 26, 2017                                    Decided:  March 14, 2017

Before WILKINSON, NIEMEYER, and KEENAN, Circuit Judges.

Affirmed by published opinion.  Judge Keenan wrote the opinion, in which Judge Wilkinson and Judge Niemeyer joined.

**ARGUED:** Daniel Robert Bieger, DAN BIEGER, PLC, Bristol, Tennessee, for Appellant.  Kevin Lee Jayne, OFFICE OF THE UNITED STATES ATTORNEY, Abingdon, Virginia, for Appellee.  **ON BRIEF:** John P. Fishwick, Jr., United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal, we decide whether the district court erred in considering at a defendant's sentencing hearing certain admissions he made while participating in a Sex Offender Treatment Program (the treatment program), which he was ordered to complete as a condition of probation in a prior case. The defendant, Juan Lara, contends that the statements he made in an interview conducted as part of the treatment program are protected by the psychotherapist-patient privilege and the Fifth Amendment privilege against self-incrimination. The government disagrees, arguing that Lara knowingly and voluntarily waived any privilege by earlier consenting to the disclosure of any such statements to the Virginia Department of Corrections (VDOC).

Upon our review, we conclude that Lara affirmatively waived any psychotherapist-patient privilege when he agreed as part of his conditions of probation in the prior case to the disclosure of any statements he made in the treatment program. We also conclude that the Fifth Amendment privilege against self-incrimination did not apply to those statements, because Lara voluntarily made the statements while participating in the treatment program. Accordingly, we hold that the district court did not err in considering Lara's statements at sentencing, and we affirm the district court's judgment.

I.

In February 2008, Lara was convicted in the Circuit Court of Grayson County, Virginia, for the aggravated sexual battery of a mentally incapacitated victim, in violation of Virginia Code Section 18.2-67.3(A)(2). For that offense, Lara received a sentence of

2

20 years' imprisonment, with 17 years suspended, and a term of 20 years' supervised probation to be served upon his release from confinement. Lara was released from custody in December 2009, and immediately began his term of supervised probation. The terms of his supervision included a requirement that Lara "[a]ttend and successfully complete a Sex Offender Treatment Program," permit the Treatment Program provider to have "unrestricted communication with the probation and parole department," and "submit to any polygraph . . . deemed appropriate by [his] supervising officer." Before he was released from custody, Lara signed the form listing these conditions. Above his signature was the following language: "I have read the above . . . and by my signature or mark below, acknowledge receipt of these Conditions and *agree to* the Conditions set forth."

Pursuant to these release conditions, Lara was referred to Flora Counseling Services Corporation, a sex offender treatment program provider. As part of the "intake" process, Rudy Flora, a licensed clinical social worker, conducted an interview with Lara in April 2010. During that interview, Lara disclosed details about his sexual history, including his sexual contact with minors and commission of forcible sexual assaults, as well as his involvement in two murders. A few weeks later, Lara confirmed these details in a polygraph examination, and signed a written statement describing the incriminating information he had provided. About three months later, in July 2010, Lara signed a form titled "Sex Offender Program Acknowledgement of Confidentiality Waiver" (waiver form), acknowledging that "whatever [Lara] tell[s] a therapist or group leader . . . is not

3

privileged or private," and that he agreed to "waive any and all such rights of confidentiality which may exist by statute or rule of law."[1]

Although Flora transmitted to VDOC Lara's admissions regarding the uncharged sexual crimes and murders, the record does not indicate that law enforcement officials took any action at that time based on this information. Lara successfully completed the treatment program without further incident, and continued on supervised probation thereafter.

Around March 2014, Lara moved from Virginia to Texas. In violation of his conditions of probation, Lara failed to notify his probation officer of the move or update his registration with the Sex Offender and Crimes Against Minors Registry maintained by the Virginia State Police. Lara was arrested several months later in Lake Jackson, Texas, and ultimately was indicted by a federal grand jury for violating the Sex Offender Registration and Notification Act (SORNA), 18 U.S.C. § 2250.

Lara pleaded guilty to the SORNA violation. He later filed a motion to exclude from consideration at sentencing his admissions of criminal activity made in the treatment program interview. After a hearing, the district court denied Lara's motion. The district court held that Lara voluntarily had waived any psychotherapist-patient privilege, and that the Fifth Amendment did not protect Lara from the government's use

---

[1] Flora testified at an evidentiary hearing that the waiver form was signed as a prerequisite for entering the treatment program, but the face of the waiver form indicates that both Flora and Lara signed the form on July 1, 2010, about three months after Lara entered the program in April 2010.

of his voluntary disclosures of incriminating information. After finding that Lara more likely than not committed the crimes that he had described in the treatment program interview, the district court sentenced Lara for the SORNA violation to the statutory maximum penalty of 120 months' imprisonment. Lara appeals from the sentence imposed by the district court.

## II.

Lara argues that the district court erred by concluding that he knowingly and voluntarily waived the psychotherapist-patient privilege. He contends that he did not voluntarily waive the privilege, because he was "compelled to participate" in the treatment program.

In response, the government observes that when Lara agreed to the conditions of probation in the state court, including the waiver of treatment program confidentiality, he did so in order to avoid additional incarceration. According to the government, this is a choice routinely faced by defendants in criminal cases, and Lara's voluntary agreement to those terms of probation precludes his present assertion of privilege. We agree with the government's view, and conclude that Lara's waiver of any privilege was knowing and voluntary.[2]

---

[2] The district court ruled on the issue of Lara's waiver of privilege without first deciding whether the psychotherapist-patient privilege applies to evidence admitted at sentencing proceedings. Because we agree with the district court that Lara waived any privilege that may have applied, we affirm the district court's ruling on the waiver issue, (Continued)

A district court's decision whether to recognize a privilege is a mixed question of law and fact, which we consider de novo on appeal. *Virmani v. Novant Health Inc.*, 259 F.3d 284, 286–87 (4th Cir. 2001). Similarly, we review de novo the issue whether the government violated a defendant's Fifth Amendment right against compelled self-incrimination. *See Howard v. Moore*, 131 F.3d 399, 414 (4th Cir. 1997) (reviewing voluntariness of a Fifth Amendment waiver as a mixed question of law and fact), *abrogated on other grounds by Miller-El v. Dretke*, 545 U.S. 231 (2005).

Under Federal Rule of Evidence 501, the federal courts recognize a testimonial privilege for psychotherapist-patient communications. *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). Like other privileges, the psychotherapist-patient privilege may be waived "by knowingly and voluntarily relinquishing it." *United States v. Bolander*, 722 F.3d 199, 223 (4th Cir. 2013) (citing *United States v. Hayes*, 227 F.3d 578, 586 (6th Cir. 2000)). We have "strictly construed" this privilege, and have emphasized that the party invoking the privilege bears the burden of showing that the privilege applies, including the absence of any waiver of privilege. *Id.* at 222.

Probation is "one point . . . on a continuum of possible punishments" imposed on those convicted of a crime. *Samson v. California*, 547 U.S. 843, 848 (2006) (quoting

---

and need not decide whether the privilege applies to evidence admitted at sentencing proceedings.

*United States v. Knights*, 534 U.S. 112, 119 (2001)). Accordingly, courts administering probation "may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." *Knights*, 534 U.S. at 119. The governmental interest in enforcing liberty-restricting conditions is especially strong when supervision is employed as an alternative to incarceration, including when, as here, a court partially suspends a sentence of imprisonment. *See Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 365 (1998) ("In most cases, the State is willing to extend parole only because it is able to condition it upon compliance with certain requirements.").

Based on the record before us, we conclude that Lara knowingly agreed to disclosure of his treatment records when he signed the form in the state court proceedings acknowledging the terms of his supervised probation. As noted above, these terms included an unambiguous provision authorizing the treatment program providers to have "unrestricted communication" with the state probation and parole department regarding "any . . . information deemed necessary to protect the community." Lara expressly signed the form "acknowledg[ing] receipt of these Conditions and *agree[ing] to* the Conditions set forth." The Virginia court suspended 17 years of Lara's 20-year sentence of imprisonment in part based on this provision, as well as the other specified terms of probation. *See* Va. Code § 19.2-303 ("[T]he [sentencing] court may suspend imposition of sentence . . . in whole or part and in addition may place the defendant on probation under such conditions as the court shall determine."). Because Lara signed a form in the state court acknowledging this "clearly expressed" condition, he was "unambiguously

7

aware" of that condition.[3] *See United States v. Hill*, 776 F.3d 243, 249 (4th Cir. 2015) (internal quotation marks omitted) (quoting *Samson*, 547 U.S. at 852).

We also conclude that Lara voluntarily agreed to be bound by these conditions of supervised probation. Lara does not cite any authority for the proposition that his acquiescence to the conditions of probation was not voluntary because the alternative would have been additional imprisonment. There is ample authority, however, to support the contrary conclusion that a defendant's agreement to be bound by court-imposed conditions of release is not rendered involuntary by the sole fact that he will be incarcerated in the absence of such acquiescence. *See United States v. Yeary*, 740 F.3d 569, 582–83 (11th Cir. 2014) (holding that a defendant voluntarily consented to conditions of pretrial release); *Anderson v. Commonwealth*, 507 S.E.2d 339, 341 (Va. 1998) (holding that an offender's selection between serving a sentence of imprisonment and complying with conditions of a suspended sentence constituted a voluntary "choice, not coercion"); *see also McKune v. Lile*, 536 U.S. 24, 50 (2002) (opinion of O'Connor, J.) (concluding that the defendant had a voluntary choice, and was not compelled to incriminate himself, when required to participate in a sex offender treatment program to

---

[3] We recognize that Flora testified that he advised Lara during his intake interview in the treatment program that any statements made during counseling would be shared with VDOC, while Lara asserts that Flora advised him about this matter after he already had made the incriminating statements. However, we need not consider this conflict in the testimony, because Lara's agreement to the conditions of probation at the time of his sentencing in the Virginia court is sufficient to show that he knowingly acknowledged the unrestricted communication between Flora and VDOC.

avoid transfer from a medium-security to a maximum-security area of a prison). Also, in analogous circumstances, we routinely have upheld plea agreements as voluntarily entered even when defendants have elected to waive important rights in exchange for reducing the risk or length of imprisonment. *See United States v. Blick*, 408 F.3d 162, 165 (4th Cir. 2005) (plea agreement waiving right to appeal held to be voluntary); *United States v. Lemaster*, 403 F.3d 216, 223 (4th Cir. 2005) (waiver of collateral attack rights held to be voluntary).

We therefore conclude that Lara's agreement to be bound by the conditions of his supervised probation was both knowing and voluntary. Accordingly, we hold that Lara affirmatively has waived any psychotherapist-patient privilege that may have applied to the incriminating statements he made while participating in the treatment program. *See Jaffee*, 518 U.S. at 15 n.14; *Bolander*, 722 F.3d at 223.

III.

Lara next argues that his Fifth Amendment privilege against self-incrimination was violated when he made the incriminating statements in his intake interview with Flora. According to Lara, the condition of probation directing him to participate in the treatment program effectively required him to disclose incriminating information or face revocation of probation. He asserts that in view of this ongoing prospect, he was not required to assert his Fifth Amendment privilege during the intake interview in order for the privilege to have applied.

9

In response, the government argues that the Fifth Amendment privilege generally is not self-executing, and that Lara's conditions of probation did not fall within the narrow "penalty" exception to this rule. We agree with the government's position.

To invoke the Fifth Amendment privilege against self-incrimination, a defendant "ordinarily must assert the privilege rather than answer if he desires not to incriminate himself." *Minnesota v. Murphy*, 465 U.S. 420, 429 (1984). Thus, if the defendant voluntarily "chooses to answer," that answer is not privileged. *Id.* One exception to this general rule occurs in "penalty" cases, in which assertion of the privilege results in a penalty that essentially "foreclose[s] a free choice to remain silent." *Id.* at 434 (internal brackets omitted) (quoting *Garner v. United States*, 424 U.S. 648, 661 (1976)). We conclude that this case does not involve such a "penalty."

The Supreme Court has explained that in order for conditions of probation to provide a sufficient "penalty" to overcome a defendant's free choice to remain silent, the threat of revocation must be nearly certain. *See id.* at 437–38 (holding that the threat of revocation of probation was not sufficient to trigger self-executing Fifth Amendment protections because "[t]here is no direct evidence that [the defendant] confessed because he feared that his probation would be revoked if he remained silent," and "[r]evocation is not automatic" for violation of probation conditions); *see also United States v. Ramos*, 685 F.3d 120, 128–29 (2d Cir. 2012). The factual record before us conclusively demonstrates that Lara answered freely and without any suggestion of invoking his Fifth Amendment privilege, and that he was never threatened with the imposition of a penalty sufficient to overcome his freedom of choice to remain silent.

10

There is no evidence that Flora told Lara that his probation would be revoked if he did not admit to uncharged sex offenses. Also, the language in Lara's conditions of probation advised him generally that "[t]he Court . . . *may* revoke or extend your probation . . . *upon cause shown.*" (emphasis added). Thus, just as in *Murphy*, revocation of Lara's probation would not have been "automatic," and he would have been afforded a court hearing before revocation could have occurred. *Murphy*, 465 U.S. at 438; *see also Ramos*, 685 F.3d at 128–29 (holding that a possibility that silence "*could* lead to the initiation of violation proceedings or the revocation of his parole*" was insufficient to create a penalty condition). And, if Lara had asserted his Fifth Amendment privilege, the state court could not have revoked his probation on that basis. *See Murphy*, 465 U.S. at 438.

Accordingly, we conclude that Lara was not compelled to provide incriminating information, and that the circumstances surrounding his statements made in the intake interview did not create a penalty situation in which the Fifth Amendment privilege was self-executing.[4] Therefore, we hold that the district court did not err in considering at the

---

[4] We are not persuaded by the Ninth Circuit's holding in *United States v. Bahr*, 730 F.3d 963 (9th Cir. 2013). The defendant in *Bahr* was required, as a condition of supervision, to complete a sex offender treatment program, and to comply with all the rules and conditions of the program. *Id.* at 965. During a polygraph administered as part of the program, the defendant in *Bahr* admitted to committing uncharged sex crimes. *Id.* The Ninth Circuit held that the penalty for refusing to answer questions in such a treatment program was "more than merely hypothetical." *Id.* at 966 (internal quotation marks omitted). The Ninth Circuit distinguished *Bahr* from *Murphy* by observing that unlike in *Murphy*, where the defendant "could have chosen not to answer," the defendant in *Bahr* "had no choice but to answer the questions posed." *Id.* at 967. As discussed (Continued)

11

sentencing hearing the incriminating statements Lara made while participating in the treatment program.

## IV.

For these reasons, we affirm the district court's judgment.

*AFFIRMED*

---

above, Lara could have chosen not to provide incriminating information, and thus the reasoning in *Bahr* does not apply to this case.