**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 23-4544**

───────────

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

   v.

WINSTON SYLVESTER OLIVER, II,

        Defendant – Appellant.

───────────

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Henry E. Hudson, Senior U. S. District Court Judge.  (3:11-cr-00063-HEH-DJN-2)

───────────

Argued:  January 28, 2025                     Decided:  April 8, 2025

───────────

Before WILKINSON and AGEE, Circuit Judges, and FLOYD, Senior Circuit Judge.

───────────

Affirmed by published opinion. Judge Agee wrote the opinion in which Judge Wilkinson and Judge Floyd joined.

───────────

**ARGUED:**  Gerald Thomas Zerkin, Richmond, Virginia, for Appellant.  Daniel J. Honold, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:**  Jessica D. Aber, United States Attorney, Erik S. Siebert, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

───────────

AGEE, Circuit Judge:

In 2011, Winston Sylvester Oliver II and his co-defendant, Warren Brown, were convicted of conspiracy to commit Hobbs Act robbery (Count 1) and attempted Hobbs Act robbery (Count 3), in violation of 18 U.S.C. § 1951, as well as use of a firearm during and in relation to the conspiracy to commit Hobbs Act robbery (Count 2) and the attempted Hobbs Act robbery (Count 4), in violation of 18 U.S.C. § 924(c)(1). Between those convictions and this appeal, Oliver's convictions for Counts 2 and 4 were vacated, requiring resentencing. This appeal stems from that re-sentence for his convictions on Counts 1 and 3.

Oliver contends that the district court violated his Fifth Amendment due process and Sixth Amendment compulsory process rights at his resentencing hearing by permitting Brown to invoke his Fifth Amendment right against self-incrimination based on the pending appeal of his own resentencing. He further contends that his sentence is procedurally and substantively unreasonable. We find Oliver's arguments lack merit and therefore affirm the district court's judgment.

I.

At trial, the Government showed that Oliver began making plans to rob a Mr. Fuel truck plaza in November 2008. Through his ex-wife, Danielle Love—who was a Mr. Fuel employee—Oliver learned the location of its security cameras and that there were large amounts of money in its cash registers. He attempted to recruit Love for the robbery, proposing three plans to rob the facility. These plans involved different staging areas and

2

exit routes, but in each plan, Oliver's role was to drive the car while another person committed the actual robbery. Love refused to participate and, fearing that Oliver would commit the robbery during her shift, resigned from Mr. Fuel.

Later that year, Oliver attempted to recruit an individual identified as "New York" to participate in the robbery. New York and Oliver discussed Mr. Fuel's layout and its cameras. Oliver explained that while New York robbed the store, he would be parked at Howard Johnson, the hotel next to the Mr. Fuel, and provide New York with a gun. JA. 259. After hearing this plan, New York declined to participate.

Not deterred, Oliver persisted. In the spring of 2009, he engaged in an "[a]lmost identical" conversation with Brown about robbing Mr. Fuel, J.A. 261, and Brown consented to participate. In May 2010, Oliver picked Brown up in a vehicle, and they drove to the Howard Johnson's parking lot. Oliver then reviewed the plan to rob Mr. Fuel, handed Brown a gun, and instructed him to rob the store. Brown took the gun from Oliver and entered the store.

After walking around the store, Brown approached the cashier, brandished the gun, and demanded money from the cash register. She initially refused, prompting Brown to fire the gun at the floor near her feet. When she had difficulty opening the register, he pointed the gun at another cashier and demanded that she open the register.

During Brown's confrontation with the cashiers, Theodore Edmond, a customer, entered the store. Edmond saw Brown speaking with the cashiers but did not realize Brown had a gun until he heard a gunshot. Out of fear for the cashiers' lives, Edmond—a former Marine—grabbed two beer bottles from the store refrigerator and shattered them over

3

Brown's head. Brown then shot Edmond in the right shoulder, right thigh, left groin, and forehead.[1]

Brown fled the store and returned to Oliver's vehicle, and they left the area. Mr. Fuel's surveillance cameras captured the entire robbery. Ten days later, Oliver and Brown were arrested. Brown admitted to his participation and informed law enforcement officers that Oliver planned the robbery and provided him with the gun.

In July 2011, Oliver and Brown were indicted for conspiracy to commit Hobbs Act robbery (Count 1), attempt to commit Hobbs Act robbery (Count 3), and using and carrying a firearm during and in relation to a crime of violence under § 924(c)(1) (Counts 2 and 4). They were convicted on all counts. Relevant here, the district court sentenced Oliver to 630 months of imprisonment—210 months concurrent on Counts 1 and 3, 120 months consecutive on Count 2, and 300 months consecutive on Count 4. Oliver's convictions and sentence were affirmed on appeal.[2]

Although Oliver unsuccessfully filed a motion under 28 U.S.C. § 2255 challenging his convictions, the district court later granted his successive § 2255 motion in part given a change in intervening law. It held that conspiracy to commit Hobbs Act robbery was no longer a valid predicate for one of his § 924(c) convictions, and thus vacated his conviction as to Count 2 and ordered that he be resentenced. But it denied Oliver's motion insofar as

---

[1] Edmond survived the shooting but has permanent injuries.

[2] Brown was sentenced to 612 months of imprisonment—175 months concurrent on Counts 1 and 3, 120 months consecutive on Count 2, and 317 months consecutive on Count 4. His appeal is still pending. *See United States v. Brown*, No. 23-4064.

4

he sought to vacate his Count 4 § 924(c) convictions, concluding that attempted Hobbs Act robbery was a valid basis for the charge. At that the subsequent hearing to account for Counts 1, 3, and 4, the district court imposed a sentence of 610 months of imprisonment—200 months on Count 1, 200 months on Count 3, and 210 months on Count 4 to run consecutively.

Oliver appealed, and this Court vacated his remaining § 924(c) conviction on Count 4 and remanded for resentencing in light of *United States v. Taylor*, 596 U.S. 845 (2022). *United States v. Oliver*, No. 19-4854, Docket No. 68 (Aug. 15, 2022) (granting motion to remand).

Before his second resentencing hearing, Oliver moved to recuse and disqualify the entire bench of the Eastern District of Virginia. He relied on an affidavit submitted by Love, wherein she asserted that Judge Roderick Young of the Eastern District of Virginia, then an Assistant United States Attorney, threatened her and forced her to testify against Oliver.[3] In the affidavit, she also recanted her prior testimony that Oliver admitted to his role in the robbery. Because the bench of the Eastern District of Virginia selected Judge Young to serve as a magistrate judge, Oliver argued that it had already endorsed his character and thus a reasonable person could question their impartiality.

The district court held a hearing on the motion to recuse. On the witness stand, Love changed her account yet again, now denying that now-Judge Young pressured her. She testified that Oliver drafted the affidavit and she did not know who Judge Young was at

---

[3] Although the affidavit refers to Judge Young as "D.A. Roderick," he was an Assistant United States Attorney at that time.

5

the time she signed it, but that she signed it because her daughter asked her to do so. She also testified that Oliver requested that she find a girl named Brittney and get her to sign an affidavit stating that she was the driver. Based on this and other record evidence, the district court denied the motion, concluding that Oliver's accusations were without merit.

Oliver represented himself at his second resentencing hearing, with appointed counsel on standby. Relevant here, he called Brown and Lee Hush (an investigator with the Federal Public Defender's Office) to testify. At the beginning of the hearing, Oliver's standby counsel and the Government presented argument regarding Brown's entitlement to his right against self-incrimination based on his pending appeal to this Court regarding his resentencing. The district court found that Brown could assert his right against self-incrimination because if his resentencing was reversed and remanded, his testimony carried "potential enhanced exposure of punishment." J.A. 811. Nonetheless, Oliver requested that Brown take the stand to specifically assert the privilege, which the district court permitted.

Before Brown took the stand, Oliver called Hush to testify to authenticate inmate letters allegedly authored by Brown, wherein he recanted certain testimony about Oliver's role in the robbery. However, Hush admitted that he had no knowledge of who drafted the letters or their relation to Oliver's case. Because the letters had not been authenticated, the district court sustained the Government's objection to exclude them.

Brown also took the stand, initially stating that he would answer "[s]ome questions." J.A. 863. But after consulting with his counsel, he told the court that he was "invoking on everything," J.A. 863, and was not "going to answer [any] questions" because he had "an appeal going on" and he did not want to "mess that up," J.A. 864.

6

Oliver offered no more witnesses and the Government did not call any witnesses, so the district court turned to calculating Oliver's Guidelines range. After rejecting Oliver's objections to the presentence investigation report ("PSR"), the district court assessed a seven-level increase to his offense level for the discharge of a firearm, a two-level increase for being a leader/organizer, a two-level increase for obstruction of justice, and a two-level increase for committing the offense while under a criminal justice sentence. Based on these adjustments, the district court concluded that Oliver's total offense level was 35, his criminal history category was VI, and his resulting Guidelines range was 292 to 365 months. The court granted the Government's motion for an upward variance, sentencing Oliver to a total of 480 months of imprisonment—240 months on each remaining count, to be served consecutively.

Oliver timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.

II.

A.

Oliver first argues that his right to present a complete defense was violated by the district court's finding that Brown could invoke his Fifth Amendment right against self-incrimination at Oliver's resentencing hearing. Because the district court did not abuse its discretion in concluding that Brown could face adverse consequences from his testimony, we disagree.

1.

7

The Fifth Amendment commands that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself," commonly known as the right against self-incrimination. U.S. Const. amend. V. The Constitution also guarantees a criminal defendant "a meaningful opportunity to present a complete defense," which is "grounded in the Sixth Amendment's guarantee of compulsory process or in the more general Fifth Amendment guarantee of due process." *United States v. Lighty*, 616 F.3d 321, 358 (4th Cir. 2010) (quoting *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006)). At times, the right to present a complete defense conflicts with the right against self-incrimination. When such a conflict arises, the right against self-incrimination generally prevails. *United States v. Abbas*, 74 F.3d 506, 511 (4th Cir. 1996).

## 2.

Before we take up the merits of the parties' arguments, a brief discussion of the standard of review is warranted. Oliver contends that *United States v. Lara*, 850 F.3d 686 (4th Cir. 2017), controls. There, we recognized that "we review de novo the issue whether the government violated a defendant's Fifth Amendment right against compelled self-incrimination." *Id.* at 690. However, the Government cites *United States v. Branch*, 537 F.3d 328 (4th Cir. 2008), where we reviewed exclusion of a witness' testimony based on the right against self-incrimination for an abuse of discretion, *id.* at 342.

At oral argument, the Government highlighted something we agree provides the critical distinction between these cases: *Lara* involved a *defendant's* right against self-incrimination, while *Branch* involved a *witness's* invocation of that right. In *Lara*, we considered whether Lara's own right against self-incrimination was violated when he made

8

incriminating statements in an intake interview. 850 F.3d at 692–93. By contrast, in *Branch*, we considered whether "the district court erred by denying Branch's request to call [an individual] as a witness" when it knew that the witness "would invoke his Fifth Amendment privilege against self-incrimination." 537 F.3d at 342. We reviewed that question for an abuse of discretion because the inquiry was ultimately an "evidentiary ruling," and concluded that the district court acted within its discretion. *Id.*

Here, as in *Branch*, our inquiry ultimately implicates a district court's evidentiary ruling: whether Brown's testimony was properly excluded based on his right against self-incrimination. So, we review that question for abuse of discretion.

Consistent with this conclusion, we have reviewed the issue presented in this appeal—whether a district court violated a defendant's right to a complete defense by improperly permitting a witness to invoke the right against self-incrimination—for an abuse of discretion in various unpublished cases. *See, e.g.*, *United States v. Hood*, 767 F. App'x 456, 460–61 (4th Cir. 2019); *United States v. Appiah*, 690 F. App'x 807, 809–10 (4th Cir. 2017) (per curiam). Moreover, our sister circuits are generally in accord. *United States v. Hankton*, 51 F.4th 578, 603–04 (5th Cir. 2022) (reviewing whether a district court properly permitted a witness to invoke his right against self-incrimination for an abuse of discretion); *United States v. Acevedo-Hernández*, 898 F.3d 150, 169 (1st Cir. 2018) (same); *United States v. Luck*, 852 F.3d 615, 628–29 (6th Cir. 2017) (same); *United States v. Chapman*, 765 F.3d 720, 730–31 (7th Cir. 2014) (same); *United States v. Perez*, 661 F.3d 568, 580 (11th Cir. 2011) (per curiam) (same); *United States v. Blaylock*, 421 F.3d 758, 770 (8th Cir. 2005) (same); *United States v. Klinger*, 128 F.3d 705, 709 (9th Cir. 1997)

9

(same). *Contra United States v. Spence*, 721 F.3d 1224, 1227–28 (10th Cir. 2013) (applying de novo review despite the general rule that appellate courts "review a district court's decision to exclude evidence for abuse of discretion" because Spence "assert[ed] that the exclusion of [a witness's testimony] violated his constitutional rights" (cleaned up)).

3.

Through this lens, we conclude that the district court did not abuse its discretion in allowing Brown to invoke his right against self-incrimination. When a witness asserts a right against self-incrimination that may conflict with a defendant's right to present a complete defense, the district court "must make a proper and particularized inquiry into the legitimacy and scope of the witness' assertion of the privilege." *Gaskins v. McKellar*, 916 F.2d 941, 950 (4th Cir. 1990). The Supreme Court has recognized a "general rule": "where there can be no further incrimination, there is no basis for the assertion of the privilege [against self-incrimination]." *Mitchell v. United States*, 526 U.S. 314, 326 (1999). This means that a defendant cannot invoke the privilege when "the sentence has been fixed and the judgment of conviction has become final," i.e., when "no adverse consequences can be visited upon the convicted person by reason of further testimony." *Id.*

Here, the parties extensively outlined this issue in their briefing and during Oliver's resentencing hearing. J.A. 779–94 (briefing); J.A. 800–12, 832–38 (hearing). Oliver's standby counsel represented that the questions for Brown related to the gun used in the robbery, and Oliver later stated that he planned to ask him about inmate letters allegedly written by Brown. Because Brown's appeal was pending at this time, the Government explained that testimony regarding Brown's role in the robbery or the letters could expose

10

him to a leadership enhancement under U.S.S.G. § 3B1.1, or an obstruction of justice enhancement under § 3C1.1, if this Court remanded for resentencing. Given those potential adverse consequences, the district court found that Brown could invoke the right against self-incrimination. However, it also granted Oliver's request that Brown take the stand to invoke that right. On the witness stand, Brown initially indicated that he would answer "[s]ome questions," J.A. 863, but after consulting with his attorney, later stated that he was not "going to answer [any] questions," J.A. 864.

Based on this record, the district court acted with commendable caution before permitting Brown to invoke his right against self-incrimination. The requested testimony necessarily implicated details of the underlying crime, and accordingly ran the risk of Brown offering new or inconsistent information. Nevertheless, the district court tried to find a compromise, asking if the Government objected when Oliver "just want[ed] to authenticate the documents." J.A. 833. However, the Government responded that it would ask potentially incriminating details on cross-examination. In its view, Oliver intended "to use the[] letters to say that . . . Brown . . . denies ever making any statements to the police," but "those statements were used at trial," and thus if he testified about the letters, "we would have to get into the facts of the case." J.A. 834. If Brown's pending appeal was remanded for resentencing, that testimony could affect the district court's view of the 18 U.S.C. § 3553(a) factors and expose Brown to the enhancements the Government enumerated. This exposure reasonably led the district court to conclude, in its discretion, that Brown could assert his right against self-incrimination. *See Acevedo-Hernández*, 898 F.3d at 170 (finding a district court "had adequate reason to believe that [a witness] faced

11

potential incrimination" even though the Government "could have gone into further detail" on cross-examination).

In response, Oliver asserts that Brown could not invoke his right against self-incrimination in post-conviction proceedings or in connection with a pending appeal related only to his sentence. However, the Supreme Court has clarified that the availability of the privilege is based on "'the nature of the statement or admission and the exposure which it invites,'" rather than "the type of proceeding in which it was involved." *Taylor v. Best*, 746 F.2d 220, 223 (4th Cir. 1984) (quoting *In re Gault*, 387 U.S. 1, 9 (1967)). We have therefore recognized that a conviction is not final while a defendant's appeal of his conviction is pending. *Id.* at 222 ("[I]t is possible that post-conviction incriminating evidence could be used against an inmate who had been convicted and sentenced but whose conviction was being appealed."). Indeed, the relevant touchstone is whether any "adverse consequences can be visited upon the convicted person by reason of further testimony." *Mitchell*, 526 U.S. at 326. The district court did not abuse its discretion in concluding that such consequences may have arisen from Brown's potential testimony, and the procedural posture of Brown's pending appeal does not alter that analysis.[4]

---

[4] Citing *Milke v. City of Phoenix*, 325 F. Supp. 3d 1008 (D. Ariz. 2018), Oliver urges us to adopt a "case and fact specific approach, rather than [applying] a bright line rule" in evaluating an individual's right against self-incrimination, Opening Br. 17. However, as discussed above, the district court already undertakes a context-specific analysis of the scope and legitimacy of a witness's privilege when a defendant claims his right to present a complete defense is impeded by that privilege. To the extent Oliver urges us to evaluate the merits of Brown's sentencing appeal in deciding this issue, we decline to do so because such an inquiry would "undercut [Brown's] right to appeal . . . by prematurely assessing the merits of his appeal in a collateral proceeding." *Best*, 746 F.2d at 222.

Oliver further contends that the district court erred by permitting Brown's blanket invocation of the privilege, rather than requiring him to assert the privilege on a question-by-question basis. We have explained that "[a] witness may be totally excused only if the court finds that he could legitimately refuse to answer any and all relevant questions." *Gaskins*, 916 F.2d at 950. At the hearing, Oliver explained that he intended to ask Brown about the authenticity of the letters, i.e., whether it was "his handwriting and if [it was] his letter," and the contents of the redacted portions of the letter. J.A. 834. However, the district court concluded that permitting Brown to testify as to the letter's authenticity and contends "would open him up . . . to cross-examination that could very well incriminate him further if his case . . . is sent back." J.A. 838. Moreover, Brown later testified that he was not "going to answer any questions." J.A. 864; *see United States v. Ramos*, 763 F.3d 45, 55 (1st Cir. 2014) (rejecting "Ramos's argument that a question-and-answer format [wa]s legally required" for a witness to invoke his right against self-incrimination where "it [wa]s clear that the district court carefully assessed the Fifth Amendment claim and informed its discretion appropriately"). Considering the scope of Oliver's proposed questions and the district court's explanation as to the potential consequences, the district court's decision to permit invocation of the privilege was not overbroad.

We thus conclude that the district court did not abuse its discretion in permitting Brown to invoke his right against self-incrimination.[5]

---

[5] Because we find that the district court did not err, we do not reach the Government's argument that any error was harmless.

13

B.

Oliver also challenges his sentence on both procedural and substantive grounds. Because his procedural arguments are meritless and the district court's 480-month sentence was substantively reasonable, we affirm.

"We review a district court's sentence for an abuse of discretion." *United States v. Provance*, 944 F.3d 213, 217 (4th Cir. 2019). Under this standard, "we review the district court's legal conclusions de novo and factual findings for clear error." *Id.* (quotation marks and citation omitted) Our review of a sentence "is limited to determining whether they are 'reasonable.'" *Gall v. United States*, 552 U.S. 38, 46 (2007). We must first ensure that the district court did not commit a procedural error, such as "failing to calculate (or improperly calculating) the Guidelines range, . . . selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* at 51. "We then consider the substantive reasonableness of the sentence, taking into account the totality of the circumstances, including the extent of any variance from the Guidelines range and giving due deference to the district court's decision that the 18 U.S.C. § 3553(a) factors, on a whole, justify the extent of the variance." *United States v. Huskey*, 90 F.4th 651, 677 (4th Cir. 2024) (cleaned up).

1.

In challenging procedural reasonableness, Oliver argues that the district court improperly imposed three enhancements under the Guidelines—(1) a two-level leadership or organizer enhancement under § 3B1.1(c), (2) a two-level obstruction of justice

14

enhancement under § 3C1.1, and (3) a seven-level firearm enhancement under § 2B3.1—and erroneously decided to run his sentences consecutively. We disagree.[6]

First, the district court did not clearly err in finding Oliver was an organizer, leader, manager, or supervisor in criminal activity. It explained that he "planned the offense," "recruited [] Brown," "[p]rovided the weapon that was used," and "us[ed] his wife to learn about how the business operated," including "how much revenue the business had[] [and] who was employed there." J.A. 895–96. At bottom, the district court concluded that Oliver "clearly exercised discretion and decision-making authority" and "if it weren't for [him], [] Brown probably would not have committed the offense." J.A. 896.

Citing *United States v. Slade*, 631 F.3d 185 (4th Cir. 2011), Oliver contends that the Government's evidence was insufficient to support a leadership/organizer enhancement. There, we reversed a district court's application of the enhancement to a "mid- to upper-level" operator in a drug conspiracy due to the "absence of any evidence" that the defendant managed a participant in the offense. *Id.* at 190–91. However, we have distinguished *Slade* where the record includes "proof that the defendant made decisions that reflected his management or supervision of the criminal activities of at least one other person." *United States v. Steffen*, 741 F.3d 411, 416 (4th Cir. 2013). Here, the evidence supports the district court's conclusion that Oliver organized the robbery, recruited Brown, and provided him with a gun, and this "evidence supplies what was missing in *Slade*." *See id.* (upholding

---

[6] Given that Oliver was ultimately sentenced to 480 months, we have elected to consider the procedural challenges on the merits. And because we conclude that his procedural challenges are without merit, we decline to undertake a harmless-error inquiry.

15

application of a § 3B1.1 enhancement where the defendant's acts "reflected an exercise of authority over [another person] and a management decision regarding which co-conspirator should be assigned a particular risk of exposure for the crime"). Thus, the district court did not clearly err in applying an enhancement under § 3B1.1(c).

Second, the district court did not clearly err in finding the factual underpinnings for the § 3C1.1 enhancement, i.e., that Oliver "willfully obstructed or impeded . . . the administration of justice with respect to the . . . prosecution . . . of the instant offense of conviction" and that his conduct related to the "offense of conviction." U.S.S.G. § 3C1.1. In Oliver's view, Love is solely responsible for any falsities in the affidavit and, even if he was partially responsible, any falsehoods were unintentional. True, the Supreme Court has explained that the enhancement is only applicable where a defendant falsely testifies about a material matter "with the *willful intent* to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993) (emphasis added). However, we have explained that a district court need not make findings as to "each element of perjury," but instead may "rest the enhancement upon the very essence of § 3C1.1—the willful obstruction of justice." *United States v. Andrews*, 808 F.3d 964, 969 (4th Cir. 2015).

Here, the district court did exactly that, noting that Oliver directed Love "to sign an affidavit that she did not draft" (which she admitted "was incorrect") and also "to have [a] lady by the name of Britteny (sic) type a letter claiming to have been the driver of the car" used in the robbery, despite extensive evidence that Oliver drove the vehicle in question. J.A. 897; *see, e.g.*, J.A. 186–87 (testimony that Oliver told Brown he would "get him out

16

of town, out of state" and that the police "didn't even know that there was [an] accomplice"); J.A. 331–32 (testimony that Oliver's cell phone was within ten miles of Mr. Fuel the night of the robbery). Based on these facts, the district court concluded that Oliver "willful[ly] obstruct[ed] or attempt[ed] to impede . . . the administration of justice" by "seeking to suborn perjury." J.A. 912. We cannot say that its conclusion in this regard was clearly erroneous. *See Andrews*, 808 F.3d at 969–70 (affirming a § 3C1.1 enhancement because "the extensive evidence against Andrews served to fortify the district court's firm conviction that" certain testimony procured by Andrews "could only have been patently false").

Third, the district court did not clearly err in applying a seven-level enhancement under § 2B3.1 because "a firearm was discharged" during the robbery. Relevant here, the Guidelines clarify that § 2B3.1, which concerns specific offense characteristics, applies to all acts "within the scope of [a] jointly undertaken criminal activity . . . in furtherance of that criminal activity, and . . . reasonably foreseeable in connection with that criminal activity" that occurred "during the commission of the offense of conviction." U.S.S.G. § 1B1.3(a)(B). Ultimately, Oliver disagrees that Brown's custodial statement that Oliver provided him the gun supports the application of this enhancement. J.A. 353 (testimony that, after he was taken into custody, "Brown stated that the driver provided the handgun used to commit the armed robbery"). But we must uphold a district court's factual determination if it was "plausible in light of the record viewed in its entirety," which accords appropriate deference to its authority "to hear evidence, find facts, and draw inferences from them." *United States v. Gross*, 90 F.4th 715, 722 (4th Cir. 2024) (cleaned

17

up). Brown's factual disagreement with the district court's inference, in and of itself, fails to establish that the district court clearly erred in its conclusion.

Finally, the district court did not clearly err in running Oliver's two 240-month sentences consecutively, for a total of 480 months of imprisonment. In determining whether to run sentences concurrently or consecutively, district courts must consider the § 3553(a) factors. 18 U.S.C. § 3584(b). Here, the district court noted Oliver's extensive criminal history, which includes 27 prior convictions—seven of which are felonies; his numerous disciplinary infractions; and the damage to the victims. It concluded that running the sentences consecutively was "not longer than necessary to provide for deterrence, protect the community, and more importantly, promote respect for the law." J.A. 920. On this record, we discern no abuse of discretion in that determination.

Oliver contends, however, that under *Iannelli v. United States*, 420 U.S. 770 (1975), the imposition of consecutive sentences was unreasonable. There, the Supreme Court recognized that, in most cases, "separate sentences can be imposed for the conspiracy to do an act and for the subsequent accomplishment of that end." *Id.* at 777. In Oliver's view, however, the conspiracy to commit robbery and attempted robbery were coterminous, and thus separate sentences are inappropriate. But Oliver overlooks precisely what *Iannelli* observed—separate sentences are entirely appropriate where, as here, a  defendant is convicted of both the conspiracy and the accomplishment of that end. In essence, then, Oliver urges us to upend both *Iannelli* and the jury's determination that he both conspired

18

and attempted to commit robbery. We cannot do so and thus affirm the district court's imposition of consecutive sentences as being well within the exercise of its discretion.[7]

2.

Having rejected Oliver's procedural challenges, we next consider whether the 480-month sentence, which upwardly varied from the Guidelines range of 292 to 365 months of imprisonment, was substantively reasonable. We conclude that it was.

As discussed above, the district court thoroughly considered the § 3553(a) factors. It discussed Oliver's 27 prior convictions, including felony convictions for aggravated sexual battery as a juvenile and grand larceny, and his numerous disciplinary infractions, including possession of an unauthorized weapon. Given this extensive criminal history, the district court concluded that "neither his prior convictions nor his periods of confinement and supervision have had any deterring effect on [Oliver's] criminal behavior." J.A. 916. It also noted the victims' injuries—the Mr. Fuel employees "sustained severe psychological injuries affecting not only their lives, but also their future employment," and Edmond was "shot by [Brown] four times at point-blank range, requiring extensive surgical procedures and resulting in permanent injuries." J.A. 913. It further acknowledged

---

[7] Oliver also contends that an amendment to the Sentencing Guidelines following his sentencing hearing retroactively rendered the district court's assessment of his criminal history points incorrect. We decline to consider this argument because the appropriate avenue for challenging a defendant's sentence based on retroactive amendments to the Guidelines is a motion for a sentence reduction under 18 U.S.C. § 3582(c)(2). *See United States v. Banks*, 104 F.4th 496, 524 n.9 (4th Cir. 2024) (declining to evaluate the reasonableness of Banks's sentence based on a Guidelines amendment, but "not[ing] that nothing prohibit[ed] him from arguing for relief based on [that amendment] in a motion for a sentence reduction under 18 U.S.C. § 3582(c)(2)").

mitigating factors, such as Oliver's "progress and behavior within the Bureau of Prisons, his upbringing, and his prior mental health diagnosis." J.A. 916. On the whole, the district court concluded that 480 months' imprisonment was an appropriate sentence in light of the § 3553(a) factors. It did not abuse its discretion in doing so.

* * *

We conclude that the district court did not procedurally err in sentencing Oliver, and that its 480-month sentence was substantively reasonable. Accordingly, we affirm the sentence.

## III.

We conclude that the district court did not abuse its discretion in permitting Brown to invoke his Fifth Amendment right against self-incrimination at Oliver's resentencing hearing. We also conclude that Oliver's sentence is procedurally and substantively reasonable. Accordingly, the district court's judgment is

*AFFIRMED*.

20