**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 24-4432**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

XAVIER HOLLEY,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Rebecca Beach Smith, Senior District Judge.  (2:11-cr-00073-RBS-LRL-3)

Argued:  March 18, 2026                    Decided:  April 20, 2026

Before THACKER, RUSHING, and BENJAMIN, Circuit Judges.

Affirmed by unpublished opinion.  Judge Rushing wrote the opinion, in which Judge Thacker and Judge Benjamin joined.

**ARGUED:**  David Iraola, Brian Joseph Young, CAPITAL ONE, McLean, Virginia, for Appellant.  Emily Rebecca Gantt, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.  **ON BRIEF:**  Lesley Whitcomb Fierst, Matthew Bonness, McLean, Virginia, for Appellant.  Erik S. Siebert, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

RUSHING, Circuit Judge:

Defendant Xavier Holley was sentenced to 40 years' imprisonment for his role in a conspiracy to rob a pawn shop that resulted in the murder of a store clerk. On appeal, he challenges his sentence and alleges ineffective assistance of counsel at sentencing. We affirm.

I.

Holley and his co-conspirators attempted to rob a pawn shop in Portsmouth, Virginia, on two occasions. The first attempt, on October 5, 2010, was aborted after the co-conspirators entered the store. The second attempt, the following day, ended with one of the co-conspirators shooting and killing the store clerk with Holley's gun while Holley waited outside in the getaway car. Afterward, Holley tossed the gun into a sewer drain.

A federal grand jury charged Holley with two counts of attempted Hobbs Act robbery, 18 U.S.C. § 1951, one count of conspiracy to commit Hobbs Act robbery, *id.*, one count of carrying a firearm in furtherance of a crime of violence, *id.* § 924(c)(1)(A)(i), and one count of using a firearm during and in relation to a crime of violence causing death, *id.* § 924(j)(1). The trial jury convicted Holley on all counts, and the district court sentenced him to life in prison plus 60 months. This Court affirmed. *United States v. Holley*, 539 Fed. App. 192 (4th Cir. 2013).

After the Supreme Court ruled that attempted Hobbs Act robbery is not categorically a crime of violence, *see United States v. Taylor*, 142 S. Ct. 2015 (2022), Holley's two Section 924 counts were vacated and a new sentencing hearing was scheduled before the same district court judge who had sentenced him ten years earlier. This time, the court

sentenced Holley to 480 months' imprisonment, composed of 240 months for each attempted robbery, to be served concurrently, and 240 months for conspiracy, to be served consecutively. Holley timely appealed.

## II.

On appeal, Holley raises three challenges to the procedural and substantive reasonableness of his sentence. When reviewing a sentence for reasonableness, we first "ensure that the district court committed no significant procedural error," such as improperly calculating the Sentencing Guidelines range, failing to consider the sentencing factors in 18 U.S.C. § 3553(a), or selecting a sentence based on clearly erroneous facts. *Gall v. United States*, 552 U.S. 38, 51 (2007). If the sentence is procedurally sound, we then consider its substantive reasonableness, applying an abuse-of-discretion standard. *Id.* We address each of Holley's arguments in turn.

## A.

Holley first challenges the district court's decision to group his three counts of conviction into two groups rather than one for determining his Guidelines offense level. The Sentencing Guidelines prescribe certain grouping rules for determining the offense level for an individual convicted of multiple offenses. Rather than grouping all three counts together, the district court divided the attempted robberies into two separate groups and grouped the conspiracy count with each attempt individually. Holley contends this decision contravened Guidelines Section 3D1.2, which instructs that "[a]ll counts involving substantially the same harm shall be grouped together," such as when "counts involve the same victim and two or more acts or transactions connected by a common

3

criminal objective or constituting part of a common scheme or plan." U.S.S.G. § 3D1.2 (2011).

Claims of procedural error are "subject to harmlessness review." *United States v. Martinovich*, 810 F.3d 232, 242 (4th Cir. 2016). A Guidelines error is harmless if we determine that "the district court would have reached the same result even if it had decided the guidelines issue the other way" and the sentence would still be reasonable. *United States v. Baronette*, 46 F.4th 177, 210 (4th Cir. 2022) (internal quotation marks omitted).

We need not decide whether the district court's grouping decision was erroneous because it was harmless. As the district court explicitly acknowledged, and the parties do not dispute, the grouping decision had no impact on Holley's total offense level. Under the district court's grouping, Holley's offense level was 45 (which exceeds the Guidelines' maximum offense level of 43). Even if all three counts were combined into a single group, the offense level would still be driven by the most serious count and remain at 45. *See* U.S.S.G. § 3D1.3(a). Either way, Holley's criminal history and offense level would result in a Guidelines recommended sentence of life imprisonment, restricted by the statutory maximum term of 720 months. While the existence of two groups "may provide a reason for sentencing at the higher end of the sentencing range," no sentencing range existed here because Holley's recommended sentence was life restricted to 720 months. *Id.* § 3D1.4(c).

Nothing in the record suggests the district court would have sentenced Holley differently if it had combined the counts in a single group. The court recognized that the grouping decision did not affect the offense level, and in imposing the sentence, the court gave no indication that the grouping affected its decision. Rather, the seriousness of the

4

crime, Holley's substantial criminal history, and his lack of remorse drove the sentence. Moreover, the district court varied significantly downward from the Guidelines recommended sentence of 720 months and, as we discuss later, the resulting sentence was reasonable. Assuming the district court committed a grouping error, it was harmless.

B.

Holley next challenges the district court's decision to run his sentence for Hobbs Act conspiracy consecutive to his sentences for attempted Hobbs Act robbery. He suggests that the district court lacked authority to order consecutive sentences and, in any event, it was an abuse of discretion to do so.

As a general matter, when a district court imposes multiple terms of imprisonment on a defendant at the same time, the court has discretion to order that the terms be served "concurrently or consecutively." 18 U.S.C. § 3584(a); *see Setser v. United States*, 566 U.S. 231, 236 (2012). This Court recently held that a district court may lawfully impose consecutive sentences for Hobbs Act conspiracy and an attempted Hobbs Act robbery that was the object of that conspiracy. *United States v. Oliver*, 133 F.4th 329, 340 (4th Cir. 2025). Holley observes that "the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt." 18 U.S.C. § 3584(a). But conspiracy is not the sole objective of attempted robbery, so that restriction does not apply here. Accordingly, the district court had authority to order consecutive sentences.

In deciding how to exercise that authority, a district court considers the Guidelines and the Section 3553(a) factors. *See* 18 U.S.C. § 3584(b); U.S.S.G. §§ 5G1.2, 5G1.3. The Guidelines instruct courts to run sentences consecutively to the extent necessary to produce

5

a combined sentence equal to the Guidelines recommended sentence, which here was 720 months.  U.S.S.G. § 5G1.2(d).

The district court did not abuse its discretion by ordering Holley to serve his 240-month sentence for conspiracy consecutive to his two 240-month concurrent sentences for attempted robbery.  The court heeded the Guidelines by imposing one consecutive sentence but stopped short of stacking all the sentences consecutively to reach Holley's Guidelines recommended sentence of 720 months.  Holley notes that Congress directed the Sentencing Commission to adopt policies reflecting "the general inappropriateness of imposing consecutive terms of imprisonment" for "conspiring to commit an offense . . . and for an offense that was the sole object of the conspiracy."  28 U.S.C. § 994(*l*)(2).  But he does not contend that Section 5G1.2(d) is beyond the Commission's authority, nor did he urge the district court to reject Section 5G1.2(d) on any ground.  The district court permissibly exercised its discretion to order consecutive sentences in crafting a total sentence that it found was sufficient, but not greater than necessary, to achieve the goals of sentencing in Holley's case.  *See* 18 U.S.C. § 3553(a).

C.

Holley also asserts that the district court erred in two respects regarding "the need to avoid unwarranted sentence disparities."  18 U.S.C. § 3553(a)(6).  The court expressly addressed this factor in its sentencing explanation, including a thorough discussion comparing Holley and his co-conspirators.

First, Holley faults the district court for failing to consider certain national sentencing statistics.  He did not present those statistics to the district court, so we review

6

this unpreserved argument only for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Walton*, 145 F.4th 476, 490 (4th Cir. 2025). We cannot say the district court erred, much less plainly so, by not independently consulting the statistics Holley presents on appeal without any party bringing them to the court's attention. In fact, we have warned that relying on such national statistics is "treacherous because each sentencing proceeding is inescapably individualized." *United States v. Abed*, 3 F.4th 104, 117 (4th Cir. 2021).

Second, Holley claims the district court improperly compared his lack of remorse to his co-defendant's remorse and acceptance of responsibility when comparing their conduct and resulting sentences. The district court did not clearly err in finding that Holley, at his original sentencing and this resentencing, attempted to minimize his responsibility rather than accepting it and was not appropriately remorseful. Nor did the court abuse its discretion in weighing that consideration among the other sentencing factors.

### D.

Although his brief makes passing reference to substantive unreasonableness, Holley does not develop any further argument challenging the substantive reasonableness of his 480-month sentence. "Any sentence that is within or below a properly calculated Guidelines range is presumptively reasonable" and "[s]uch a presumption can only be rebutted by showing that the sentence is unreasonable when measured against the 18 U.S.C. § 3553(a) factors." *United States v. Louthian*, 756 F.3d 295, 306 (4th Cir. 2014). Holley's sentence is 20 years below his properly calculated Guidelines sentence of 60 years in prison. He has not carried his burden to rebut the presumption that his below-Guidelines sentence is substantively reasonable.

III.

In his final argument on appeal, Holley contends that he received ineffective assistance of counsel at sentencing because his attorney labored under a conflict of interest. "A criminal defendant's Sixth Amendment right to effective assistance of counsel includes a right to counsel unhindered by conflicts of interest." *Mickens v. Taylor*, 240 F.3d 348, 355 (4th Cir. 2001) (en banc), *aff'd*, 535 U.S. 162 (2002). A conflict can arise when "a lawyer must choose between representing a client's interests and implicating herself in her own serious misconduct," as "[l]awyers cannot reasonably be expected to make arguments advancing a client's claim that, in essence, denigrate their own performance." *United States v. Glover*, 8 F.4th 239, 246–247 (4th Cir. 2021) (internal quotation marks omitted). To establish ineffective assistance of counsel on conflict of interest grounds, a defendant must show "'an actual conflict of interest'" that "'adversely affected his lawyer's performance.'" *Mickens*, 240 F.3d at 355 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). We consider such claims de novo but review a district court's underlying factual findings only for clear error. *Id.* at 360.

Around the same time the parties were preparing for resentencing in this case, Holley sought to file a motion for a new trial asserting that his co-conspirator's trial testimony about communicating with Holley the day of the first attempted robbery could not have been true because Holley had been arrested for a different crime and was in jail during part of that day. On Holley's motion, the district court continued his sentencing hearing while counsel researched his claim and obtained jail records. The day before Holley's rescheduled sentencing hearing, he filed a pro se motion for a new trial, arguing

8

that the prosecution had knowingly used perjured testimony along those lines at his trial. With that pro se motion, Holley submitted a letter from his lawyer, Andrew Protogyrou, who also had represented Holley at his trial and original sentencing. In the letter, Protogyrou explained his belief that it could be a "conflict of interest for [him] to file anything that would imply [he] may have missed or failed to argue something at trial," presumably because he did not cross-examine Holley's co-conspirator about the timing issue addressed in the new trial motion.* J.A. 881. Nevertheless, Protogyrou expressed no concern about his ability to ably represent Holley at the resentencing.

At the outset of the sentencing hearing, Protogyrou informed the court that he and Holley "have gotten along wonderfully. There is no issue such as that. We are prepared for sentencing, but he has asked that counsel be appointed to represent him on his request for a new trial." J.A. 886. The district court found that "there has been nothing offered to the Court that you're not prepared for sentencing." J.A. 887. Noting that the parties were discussing "two different proceedings," the court explained that the sentencing would proceed with Protogyrou representing Holley, but that Holley could refile his new trial motion with new counsel. J.A. 887. When asked if he had any questions about that arrangement, Holley answered "[n]o ma'am." J.A. 888.

---

* The district court struck Holley's original new trial motion because it was unsigned. Holley eventually filed a corrected new trial motion pro se, which the district court denied because it was filed almost 12 years too late and had "major problems" on the merits in any event. J.A. 1069; *see* J.A. 1052–1074. That decision is not before us on appeal.

9

We need not decide whether Protogyrou had an actual conflict of interest because Holley has not shown any adverse effect. *See United States v. Nicholson*, 611 F.3d 191, 206 (4th Cir. 2010) ("[A]n adverse effect is not presumed from the existence of [a] conflict of interest." (internal quotation marks omitted)). To show an adverse effect on his lawyer's performance, a defendant must (1) identify a plausible alternative strategy that defense counsel could have pursued, (2) show that the strategy was objectively reasonable under the facts known to the attorney at the time such that pursuing the strategy was "clearly suggested by the circumstances," and (3) establish that counsel's failure to pursue that strategy "was linked to the actual conflict." *Mickens*, 240 F.3d at 361 (internal quotation marks omitted).

At no point does Holley convincingly link the purported conflict regarding the new trial motion to any failure at *resentencing*. In his opening brief, Holley did not identify any alternative strategy which Protogyrou could and should have pursued at resentencing. In his reply brief, Holley remarks that "conflict-free counsel" theoretically could have better represented Holley at resentencing and implies, without supporting evidence, that Protogyrou was distracted by the purported conflict. Reply Br. 25. Holley offers nothing but speculation and accordingly has not demonstrated an adverse effect on Protogyrou's performance at resentencing.

Further, no adverse effect is apparent from the record. The allegedly problematic portion of the proceedings on which Holley focuses occurred several months before resentencing, when Protogyrou put Holley on the stand to substantiate Holley's new trial theory in support of an (ultimately successful) continuance motion. But rather than

10

harming Holley at resentencing, the resulting investigation yielded evidence that Protogyrou used to argue for a mitigating role reduction. From the record before us, it appears that Protogyrou ably represented Holley at resentencing, achieving a sentence 20 years below the Guidelines recommendation. With no request for new counsel at resentencing and no indication that counsel was unprepared for resentencing or that his relationship with Holley was anything short of "wonderful[]," the record does not support a finding of ineffective assistance at sentencing, even assuming a conflict of interest. J.A. 886.

## IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

11